OPINION OF THE COURT
Lewis R. Friedman, J.
In this case involving the special election for Member of Congress in the 18th Congressional District, petitioner Serrano, a candidate of the Democratic and Liberal Parties, together with Jose Ithier seek to invalidate the certificate of nomination of Ismael Betancourt, Jr., as the Right to Life (RTL) candidate.
Congressman Robert Garcia resigned his seat in the public office as Member of Congress from the 18th Congressional District. On February 12, the Governor called a special election for March 20, 1990 to fill that vacancy. The last day to file a certificate of nomination was February 22, 1990 (Election Law § 6-158 [6]).
*3 On February 20, the RTL Party filed a certificate of nomination naming Robert E. Hurley as the party’s candidate; a certificate of authorization, pursuant to Election Law § 6-120, was annexed to the certificate of nomination. The nomination was made by the State Chairman Lena Harknett, a resident of Suffolk County. Mr. Hurley accepted the nomination; his certificate of acceptance was also filed at that time. Mr. Hurley, by certificate filed February 26, declined the nomination. Later that day, the RTL Party filed a certificate designating Ismael Betancourt, Jr., as the candidate, together with a certificate of authorization, and Mr. Betancourt’s acceptance.
Petitioners challenge the nomination of Mr. Betancourt on the grounds that Mr. Hurley’s declination, after he filed an acceptance, was invalid, and that the certificate of nomination was defective under the Federal Constitution. The parties have offered documents in evidence, and submitted briefs; they also presented oral arguments before the court.
Respondent argues that petitioner lacks standing.
It is beyond question that, at least in the 1980’s, an aggrieved candidate has standing to challenge whether a candidate of another party is properly nominated (Matter of Liepschutz v Palmateer, 65 NY2d 963; Matter of Friedman v Board of Elections, 65 NY2d 959). An aggrieved candidate may not inquire into such matters as the proper operation of another party (Matter of Wydler v Christenfeld, 35 NY2d 719). The challenge here, however, is based on facts appearing on the face of the petition. (Cf., Matter of Martin v Tutunjian, 89 AD2d 1034.) Thus, there is sufficient standing.
The validity of the declination is not free from doubt. Election Law § 6-146 (1) provides that a candidate "nominated for an office, otherwise than at a primary election, may, in a certificate * * * decline the designation or nomination”. A certificate of acceptance is not generally required. An acceptance is only required if the candidate is nominated "by a party of which he is not a duly enrolled member”. (Election Law § 6-146 [1].) In that event, a certificate of authorization is also required (Election Law § 6-120 [3]). Mr. Hurley, who was first nominated for this special election, is a registered and enrolled member of the RTL Party. Therefore, the certificate of acceptance by Mr. Hurley and the certificate of authorization were not required by statute.
The court can find no statutory or decisional authority which precludes a candidate who is not required to file an *4 acceptance from timely declining. It may well be that a candidate who is required to file an acceptance is precluded, but that issue is not presented here. (Cf., Matter of Coons v Meisser, 26 AD2d 785, affd 18 NY2d 692.) Petitioner claims that the acceptance and authorization misled him into believing that Mr. Hurley, not a "minority candidate”, was a "real” candidate before he, an Hispanic, accepted the Democratic nomination. The Election Law does not make the concerns of another party’s candidate as to his opponent’s identity sufficient to require the invalidity of the declination. Of course, the court does not find any reliance by the RTL Party on Mr. Hurley’s acceptance; there is, therefore, no estoppel (compare, Matter of Coons v Meisser, supra).
Since the declination was valid, and concededly timely, Mr. Betancourt was validly substituted under the Election Law to fill the vacancy.
The constitutional challenge to the procedure here is that it violates the one-person, one-vote principle of the Federal Constitution, as enunciated in Montano v Lefkowitz (575 F2d 378 [2d Cir 1978]).
At the outset, respondents suggest that the constitutional claim cannot lie heard without service on the Attorney-General. The short answer to that argument is that the constitutionality of a State statute or, indeed, a regulation is not at issue. Rather, the challenge is to a political party’s exercise of a permitted power in a particular fashion. The Attorney-General is, therefore, not a necessary party (Executive Law § 71; CPLR 1012 [b]). Matter of McGee v Korman (70 NY2d 225, 231) is not to the contrary. In that case the challenge was to the validity of a section of the Election Law. There is no such issue here.
Nominations by the RTL Party of candidates for election at special elections are specifically authorized to be made by the Chairman of that party, acting alone. (Rules and Regulations of the Right to Life Party, art IV, §8.) The Court of Appeals has held that the delegation of the power of nomination to the State Chairman complies with the Election Law (Matter of Schiliro v Mazza, 53 NY2d 735).
The court must then proceed to the merits of the Federal constitutional claim. In Montano (supra) the Second Circuit considered the validity of the procedures used by the political parties in Bronx County to nominate candidates at special elections to be held to fill vacancies in the position of Member *5 of Congress in the then 21st (now 18th) Congressional District. The petitioners in Montano alleged that nomination by the Executive Committees of the parties "violated the principle of one man, one vote — more accurately, of one Democrat (or Liberal, etc.) one vote” (575 F2d, supra, at 380). (The RTL Party was not functioning when Montano was decided. The Democratic and Liberal Parties had changed their challenged rules before the Second Circuit decision.)
The Federal court based its analysis on the Federal Constitution’s provisions concerning election of Representatives (US Const, art I, §§ 2, 4) and the congressional statutes implementing them. Since 1842 Congress has required the current single-member district system. (5 Stat 491, reenacted at 81 Stat 581; 2 USC § 2c.) The court’s holding is unequivocal. "It seems to us to be implicit in the single-member district system for the election of Representatives that insofar as a state allows nomination to be made on an elective basis, it cannot constitutionally include in the electorate persons elected to a committee for the specific purpose of representing units in other districts. It is simply inconsistent with the concept of election of Representatives by districts that a candidate should be chosen in part by persons outside the district elected to these posts as such.” (Montano v Lefkowitz, 575 F2d, supra, at 385.)
This court is constrained to follow the reasoning of Montano (supra). Cases subsequent to Montano have made it clear that Montano is still viable with respect to congressional elections, even though it does not apply to elections to State office (see, Mrazek v Suffolk County Bd. of Elections, 630 F2d 890, 898 [2d Cir 1980]; cf., Jefferson v Abrams, 747 F2d 94, 96; see, Montano v Lefkowitz, 575 F2d, supra, at 387, n 17). One Federal Judge has opined that certain limitations in Montano may not have survived the Supreme Court’s holding in Democratic Party of U. S. v Wisconsin (450 US 107; Di Rosa v Dodd, 514 F Supp 258, 262 [ED NY 1981]). This court can, however, find no language or holding in Democratic Party which impinges on the core holding of Montano.
The Court of Appeals decision in Matter of Schiliro v Mazza (supra) does not effect the applicability of Montano (supra) to congressional elections. Although Montano had been cited to the State courts, it was not referred to by them. In any event, Schiliro involved a special election for the Assembly and did not involve a congressional election.
The question then is whether the selection of a party’s *6 nominee for a congressional vacancy may be made solely by a State Chairman who has no connection with the district at issue. The core language of Montano (quoted at 5, supra) is sufficiently clear to invalidate the RTL procedure. Moreover, the Second Circuit also described procedures that it found to be patently defective. One is quite similar to the procedure at issue here. "It would hardly be argued that a nominee for a special election in the 21st C.D. in the South Bronx, with its predominately black and Hispanic population, could be validly selected by a statewide committee containing delegates elected by upstate communities or even by a New York City committee with delegates elected to represent that city’s wide spectrum of ethnic and economic interests.” (575 F2d, supra, at 386.)
Here the State Chairman, a white woman who resides in Suffolk County, apparently alone, nominated the candidate for, ironically, the same district described in Montano (supra). The same result follows if the court were to review the certificate of substitution signed by 2 of the 3 members of the committee on vacancies — one is the State Chairman and the other resides in New Hyde Park, Nassau County. (Of course, since the certificate of nomination is defective on its face, the naming of the committee on vacancies must also fall.)
In short, the RTL Party procedure applied here violates the Federal Constitution’s one-person, one-vote rule insofar as it is applicable to congressional elections. The certificate of nomination is defective.
The petition is granted. The Board of Elections is directed to remove the name of Ismael Betancourt, Jr., from Right to Life Party, special election ballot for the public office of Representative of the 18th Congressional District, Bronx County.