OPINION OF THE COURT
Thomas J. Spargo, J.
Petitioner Neil D. Breslin is the Democrat candidate in the 2004 general election for State Senator from the 46th Senate District which comprises all of Albany County and is coterminus with Albany County.
Breslin commenced this proceeding pursuant to section 16-102 of the Election Law, contending that he is an aggrieved candidate, to challenge the substitution of the respondent Michael F. Conners II as the Republican Party candidate for this same office. Conners was named by the respondent Committee to Fill Vacancies to fill the vacancy that occurred upon the declination of the respondent Theodore Hartman.
The essential facts are not in dispute.
On Thursday, July 15, 2004, the last day set forth in this year’s political calendar for filing designating petitions, the Republican Party filed with the respondent Albany County Board of Elections a single countywide designating petition which included Gregory Fiozzo as the Republican candidate for State Senator for the 46th Senate District.
On that same date, Fiozzo filed a certificate of declination with the Board creating a vacancy in the Republican designation for the office of State Senator for the 46th District.
The Election Law, at section 6-158 (2), provides that “[a] certificate of acceptance or declination of a designation shall be filed not later than the fourth day after the last day to file such *954 designation.” Because the last day to file designating petitions was Thursday, July 15, 2004, the fourth day thereafter, Monday, July 19th, was the last day by which a candidate named in the designating petition could accept or decline such designation.
On Friday, July 16, 2004, the Committee, named in the original designating petition, filed with the Board a duly executed “Certificate Filling Vacancy After Declination” which named Hartman as the substituted Republican candidate for the State Senate seat. Hartman also filed a certificate of acceptance on July 16th.
On Thursday, July 22, 2004, Hartman filed a certificate of declination with the Board withdrawing his name as the Republican candidate for State Senator. On the following day, Friday, July 23, 2004, the Committee filed a certificate of substitution with the Board which named Conners as the Republican candidate for State Senator from the 46th Senate District in Albany County.
The Election Law, at section 6-158 (3), states that “[a] certificate to fill a vacancy in a designation caused by declination shall be filed not later than the fourth day after the last day to decline.”
As shown above, the last day for Fiozzo to decline was Monday, July 19th, and the fourth day thereafter — which constitutes the last day for filing a certificate to fill a vacancy — was Friday, July 23, 2004, the day the certificate naming Conners was filed with the Board.
Petitioner Breslin1 23s Argument:
1. Breslin urges this court that Hartman, having once accepted the Republican designation for the office of State Senator, is thereafter precluded from filing a declination. Petitioner principally relies upon the Court of Appeals holding in Matter of Coons v Meisser (26 AD2d 785 [1966], affd 18 NY2d 692 [1966]).
2. Breslin next argues that the declination by Hartman on July 22nd is invalid because it is untimely. That is, it was not filed either within four days after the last day to file the designation (Election Law § 6-158 [2]) or within four days after Hartman himself filed his acceptance of the designation. Breslin then concludes that pursuant to the Election Law, it is a fatal defect to file required papers late.
3. Finally, Breslin asserts that, notwithstanding that he is the Democratic Party candidate for State Senator from Albany County, he has standing as an “aggrieved candidate” pursuant *955 to section 16-102 of the Election Law to challenge the substitution of Conners as the Republican candidate for this same office.
Respondent Conners’ Argument:
1. The Election Law does not prevent Hartman, a Republican, after filing a certificate of acceptance to be substituted to fill the vacancy caused by the declination of Fiozzo, from thereafter filing a declination of his nomination by the Committee.
2. The declination by Hartman was timely filed.
3. Breslin, as the Democrat candidate, is without standing as a “candidate aggrieved” to challenge the substitution of Conners as the Republican candidate for the same office of State Senator from the 46th District.
Discussion:
A. May a candidate decline a nomination after he has executed an acceptance of that nomination?
The Election Law contains no explicit prohibition against a candidate declining a nomination after he has accepted that nomination or designation. Nor was such a statutory prohibition found or cited by the parties herein.
In the absence of any statutory prohibition supporting Breslin’s position, the court has examined the case law cited in support of the proposed restriction. The decision offering the most support for the Breslin position is Matter of Coons v Meisser (26 AD2d 785 [1966], affd 18 NY2d 692 [1966]). In Coons, a Republican candidate for Congress in Nassau County executed an acceptance of the Conservative Party nomination. In reliance upon that acceptance, another candidate who had filed a designating petition for the same Conservative Party nomination filed a declination. In addition, the Conservative Party Committee also relied upon the candidate’s original acceptance.
The Appellate Division, Second Department, in Coons, disallowed the declination and reinstated the candidacy because of the reliance placed on the original acceptance by the Conservative Party as well as the other candidate. The Court found that an estoppel was created by this reliance.
The Court of Appeals, in affirming the Appellate Division, noted merely that “[u]nder the circumstances of this case appellant Brennan was estopped from changing his position. We pass upon no other question. No opinion” (18 NY2d at 694).
In Matter of Serrano v Cuttita (147 Misc 2d 1 [1990], affd 159 AD2d 330 [1990], appeal dismissed 75 NY2d 873 [1990]), the court was faced with a fact pattern nearly identical to our own.
*956 With respect to a special election to fill a vacancy in a congressional seat in Bronx County, the Right to Life (RTL) Party nominated Robert Hurley, a registered and enrolled member of the RTL Party. The last day to file a certificate of nomination was February 22, 1990. The RTL Party filed a certificate naming Hurley as its candidate on February 20, 1990 and Hurley filed a certificate of acceptance of the nomination, also on February 20, 1990. Six days later, on February 26, 1990, Hurley filed a declination and the RTL Party substituted a new candidate, Ismael Betancourt, by a certificate filed that same day.
The Democrat candidate, Jose Serrano, instituted a proceeding to invalidate the Betancourt nomination because Hurley declined the RTL nomination after he had previously accepted it. The Serrano court held that the declination by Hurley after he had accepted the nomination was valid and timely, particularly in view of the fact that Hurley, as an enrolled member of the RTL Party, was not required to file an acceptance.
This same circumstance prevails in the instant case. Hartman is enrolled in the Republican Party and an acceptance of the Republican designation was not required. No showing has been made that any other candidate relied upon the acceptance so as to warrant estoppel. This fact distinguishes the Coons holding from the Serrano fact pattern and Coons is equally inapplicable to the present case.
The other cases cited by petitioner Breslin, Matter of Bruno v Rettaliata (122 AD2d 976 [1986]), Matter of English (206 Misc 709 [1954]), and Matter of Smith v Board of Elections (196 Misc 109 [1949]), as authority for this court to disallow or invalidate the declination by Hartman are neither persuasive nor compelling.
B. Were the declination of Hartman and the substitution of Conners timely under the Election Law?
Breslin urges that the four-day time period allowed for Hartman to submit his declination should be measured either from the date of his acceptance on Friday, July 16th, or from the last date for filing designating petitions on July 15th.
Respondents argue that the four-day period for filing an acceptance or declination which expired on Monday, July 19th, is the time period which applied to the original Fiozzo nomination and Fiozzo had until July 19th to file his declination. (See, Election Law § 6-158 [2] [“A certificate of acceptance or declination *957 of a designation shall be filed not later than the fourth day after the last day to file such designation”] [emphasis added].)

That is, what expired on Monday, July 19th, was the time period for Fiozzo to decline, not the newly substituted candidate Hartman.

Should the four-day time period be measured from the date that Hartman executed and filed his acceptance on July 16th? The Election Law, at section 6-158 (2), measures the time period for filing a declination by starting with a statutory deadline for the filing of a designation or nomination instrument rather than from the date when the nominating certificate or designating petition is actually filed.
Tellingly, at section 6-154, the Election Law provides for the filing of general objections within three days from the filing of the document challenged. It then further provides for filing general objections within three days from the last day for filing a document if no such required document was filed:
“Such objections shall be filed with the officer or board with whom the original petition or certificate is filed within three days after the filing of the petition or certificate to which objection is made, or within three days after the last day to file such a certificate, if no such certificate is filed ...” (Election Law § 6-154 [2]).
Thus, the drafters of the Election Law were aware of the alternatives of measuring the time from which a certificate of declination could be filed from not only the last day to file a designating petition or certificate, as stated at section 6-158, but also from the date of the actual filing of the certificate or petition. Obviously, for certificates of declination, the drafters of the Election Law chose to only measure the time for filing from the last day on which a certificate or petition could be filed.
Respondents argue that the statute expressly provides that Fiozzo had until July 19th to file a declination and the Committee had until July 23rd to fill the resulting vacancy.
Once again, the Election Law, at section 6-158 (3), does not measure the time period within which a substitution may be made from the date of the actual declination, but rather measures the four-day period from “the last day to decline.”
The court finds that the declinations and substitutions of the respondents were all conducted within the statutory time period set forth in section 6-158 (2) and (3), which expired no earlier than July 23rd.
*958 The attempts by Breslin to create and impose shorter time periods for filing declinations and substitutions to fill vacancies is just not supported by the statutory language or the scheme by which the timetables in the Election Law are measured. That is, the timetables specifically at issue here are not triggered from the actual filing of the applicable documents, but rather are measured from the last day by which they could have been filed.
The court concludes that the declinations and substitutions herein were timely filed within the statutory time period set forth in section 6-158 of the Election Law.
C. Does Breslin have standing to challenge the designation of the Republican candidate to oppose him?
The seminal case in restricting the opportunity of a candidate aggrieved to challenge a nomination is Matter of Wydler v Cristenfeld (35 NY2d 719 [1974]). There the party authorization process adopted and implemented by the Democratic Party for the substitution of Allard Lowenstein as a congressional candidate was found immune from challenge by the Republican candidate opposing him.
The Court of Appeals stated (at 720) that
“[the authorization] provision has as its purpose the regulation of the affairs of a political party and is intended to have as its beneficiaries, only members of that political party or one who asserts that he was entitled to the authorization thereunder. It is of no interest to others that formalities have not been followed, so long as the purpose of subdivision 4 of section 137 is not frustrated.”
In Matter of Gross v Hoblock (6 AD3d 933 [2004]), the Third Department recently addressed the issue of a candidate’s standing to challenge the minor party nomination of his opponent when the minor party failed to file a certificate of authorization as required under section 6-120 of the Election Law. In Gross (at 935-936), the Court summarized its view of the standing issue:
“To be sure, this Court previously has held that a candidate of one party has no standing to challenge the designating petition of another party’s candidate where such challenge is founded upon a lack of compliance with Election Law § 6-120 ... A careful review of these and other cases, however, reveals that the standing issue ultimately turns upon *959 whether the underlying challenge is to the internal affairs and/or operating functions of a political party in its designation of candidates or, rather, to a legislatively mandated requirement of the Election Law . . . Thus, where the challenge is directed to the manner in or methods by which a given party committee votes on or designates a particular candidate, a nonparty candidate will not be deemed aggrieved, as he or she has no interest in whether the formalities of that process have been followed . . . Where, however, the challenge is to a legislatively mandated requirement of the Election Law, such as the content of a designating petition . . ., ‘the interests involved . . . transcend the mere regulation of the affairs of a political party’ . . . and standing will lie. Inasmuch as the failure to file a Wilson-Pakula authorization ‘constitutes a fatal defect rather than a mere technicality’ . . . and, hence, represents a challenge to a legislative mandate of the Election Law, we are satisfied that petitioner has standing.”
Richard Gross was the Democrat candidate for Albany County Legislator in the 2004 special legislative election, and his opponent William Hoblock, the Republican candidate, had also filed designating petitions for the Conservative Party endorsement. Although the Conservative Party had admittedly agreed to authorize the Hoblock candidacy, the certificate representing the vote of the Conservative Party Committee was not filed with the Board of Elections. The Appellate Division affirmed the invalidation of the Conservative Party nomination of Hob-lock and the standing of Mr. Gross to challenge that nomination.
The Third Department also considered standing in Matter of Rose v Smith (220 AD2d 922 [1995]), which involved another special election where three election contests for vacancies in the New York State Assembly were scheduled. The Democratic Party candidates for the Assembly were nominated by certificates signed by the county chairmen in the respective counties of each Assembly District. Citizen objectors, who were enrolled Republicans, challenged the legality of these certificates for noncompliance with both the Election Law and Democratic Party Rules.
The State Board of Elections ruled the nominations invalid and the Democrat candidates then commenced proceedings to *960 validate their nominations. In affirming the lower court, the Third Department held (at 923-924) that
“given the particular facts of this case, not only is there no evidence that a substantial right of respondents [Republican objectors] would be prejudiced but rather it is clear that a substantial right of petitioners will be so prejudiced. Dismissing the proceedings would abort candidacies and disenfranchise the voters in the respective Assembly Districts involved. In this regard, we emphasize that petitioners commenced their proceedings to validate their certificates of nomination in response to respondents’ attempts to have the certificates of nomination voided on grounds for which respondents clearly lacked standing. Election Law § 16-102 (1) specifies the manner in which a judicial proceeding may be commenced to challenge the nomination of a candidate for public office. Case law has construed this provision as prohibiting a member of one political party from objecting to the certificate of nomination of a candidate of another political party where the nature of the objections relate solely to the internal operations of the other political party (see, Matter of Stempel v Albany County Bd. of Elections, 60 NY2d 801; Matter of Wydler v Cristenfeld, 35 NY2d 719). Here, while respondents did not commence judicial proceedings and only filed objections, the same reasoning should be applied. The nature of the objections at hand, like the objections in the above cited cases, relate to the internal regulation of the affairs of another political party. Only members of that political party should be entitled to challenge actions taken in relation to such internal matters. It is true that Election Law § 6-154 (2) permits objections to a nomination to be filed by ‘any voter registered to vote for such public office’. This provision, however, should be construed in light of the above case law. Standing to file objections should be denied where they relate to the internal operations of another political party. Respondents, as Republican Party members, thus should not have been permitted to file objections to the internal workings of the Democratic Party’s nominating procedures.”
In another important Third Department case on standing, the *961 Court denied standing to a slate of Republican town candidates in Albany County who challenged the Conservative Party nominations of their Democrat opponents. In Matter of Stempel v Albany County Bd. of Elections (97 AD2d 647, 648 [1983], affd 60 NY2d 801 [1983]), the Court denied the petitioners standing as “aggrieved candidates” because
“[hjere, the challenge is to the operating function of a political party in its designation of candidates and not to the contents of the basic instrument which the Legislature has required to be in strict conformity with requirements of law. The external influence sought to be imposed upon the operation of another political party in the selection of its candidates is, in our view, beyond the scope of legislative intendment.”
In the instant case, Breslin, as the Democrat candidate, has challenged the actions of the Republican Committee to Fill Vacancies, whose sole function was to select a Republican candidate to oppose Breslin in the general election.
The work of the Committee in selecting Conners as the Republican candidate for its State Senate candidate vacancy was completed by the statutorily set deadline of July 23rd— which was the completion of the four-day periods for declination and substitution explicitly set forth in section 6-158 of the Election Law. In addition, there is no statutory prohibition against a candidate accepting a nomination and thereafter declining the nomination and thus allowing the resulting vacancy to be filled by the appropriate political party officials.
Indeed, the only purpose of the Breslin challenge here is to improperly thwart the choice of the Committee that must pick a replacement candidate to oppose him. Curiously, it seems that Breslin wants this court to stop the Republican nominating process in the middle of the selection period and to mandate the candidacy of Hartman, who has publicly sworn that he no longer wishes to be a candidate.
Breslin’s argument is somewhat similar to the challenge faced two years ago by the New Jersey Supreme Court when Robert Torricelli, the incumbent United States Senate candidate seeking reelection, suddenly withdrew his candidacy after the statutory deadline for such a declination had passed. Upon application by the New Jersey Democratic Party, the New Jersey Supreme Court held that a vacancy in the nomination had been created and set up a process by which the vacancy in the *962 Democratic Party nomination would be filled (New Jersey Democratic Party, Inc. v Samson, 175 NJ 178, 814 A2d 1028 [2002]).
The New Jersey Supreme Court cited an earlier decision which articulated the necessity for the timely substitution of the Torricelli replacement: “It is in the public interest and the general intent of the election laws to preserve the two-party system and to submit to the electorate a ballot bearing the names of candidates of both major political parties as well as of all other qualifying parties and groups” (New Jersey Democratic Party, Inc. v Samson, 175 NJ at 188, 814 A2d at 1034-1035, quoting Kilmurray v Gilfert, 10 NJ 435, 441, 91 A2d 865, 867 [1952]).
The Republican United States Senate candidate in New Jersey sought to have Senator Torricelli’s name remain on the ballot even though he had withdrawn. This position was rejected by the New Jersey Supreme Court and it stated a universal goal that all courts confront when faced with a difficult choice in electoral cases:
“When this Court has before it a case concerning the New Jersey election laws, we are directed by principle and precedent to construe those laws so as to preserve the paramount right of the voters to exercise the franchise. We have understood our Legislature, in establishing the mechanisms by which elections are conducted in this State, to intend that the law will be interpreted ‘to allow the greatest scope for public participation in the electoral process, to allow candidates to get on the ballot, to allow parties to put their candidates on the ballot, and most importantly to allow the voters a choice on Election Day’ [Catania v Haberle, 123 NJ 438, 588 A2d 374 (1990)]” (New Jersey Democratic Party, Inc. v Samson, 175 NJ at 190, 814 A2d at 1036).
Breslin requests the same relief as those Republicans in New Jersey who, two years ago, opposed the replacement of Senator Torricelli in the general election. Breslin seeks to choose his opponent.
In denying the petition herein, this court is guided by the Third Department’s commitment to similarly provide voters in New York a real choice in the election process and to thwart, when necessary, the overreaching of party leaders or candidates improperly attempting to reach across the partisan divide and *963 interfere with the internal workings and functions of another political party.
The Matter of Rose v Smith case (220 AD2d 922 [1995]) manifests the stalwart determination of the Third Department to protect the nomination process of a political party from interference and meddling by those who have no stake or interest in it.
Thus, the court concludes that there is nothing impermissible, nor any prohibition in the Election Law, to prevent an enrolled party member from accepting his party’s nomination and thereafter declining such nomination. Similarly, the timetable for the declination and substitution of candidates for the Republican nomination for State Senator in Albany County, as set forth in section 6-158 of the Election Law, has been fully met and complied with.
Finally, were it necessary to so find, the court concludes that petitioner Neil D. Breslin is without standing as an aggrieved candidate to invalidate the nomination of respondent Michael F. Conners II, because, under the circumstances of this case, it is not Breslin’s right to pick which Republican candidate he would prefer to oppose him in the election.
The relief herein is granted without costs.