SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**In re Adoption of N.J.A.C. 5:96 & 5:97 by N.J. Council on Affordable Housing (M-392-14) (067126)**

**Argued January 6, 2015 -- Decided March 10, 2015**

**LaVECCHIA, J., writing for a unanimous Court.**

This matter comes before the Court on a motion in aid of litigants' rights, pursuant to Rule 1:10-3, from the Court's judgment reported at 215 N.J. 578 (2013). By this motion, the Court considers a request for relief from the exhaustion of remedies required by the Fair Housing Act (FHA), N.J.S.A. 52:27D-301 to 329, and to allow civil actions concerning municipal compliance with constitutional affordable housing obligations to proceed in the courts.

This Court's Mount Laurel series of cases recognized that the power to zone carries a constitutional obligation to do so in a manner that creates a realistic opportunity for producing a fair share of the regional present and prospective need for low and moderate income housing. The Legislature enacted the FHA to assist in municipal compliance with that obligation. The FHA created the Council on Affordable Housing (COAH), designed to provide an optional administrative alternative to litigating compliance through civil exclusionary zoning actions.

The FHA encourages compliance by compelling COAH to establish and periodically update presumptive constitutional housing obligations for each municipality and to identify the means by which a town's proposed affordable housing plan, housing element, and implementing ordinances can satisfy its obligation. The FHA rewards compliance in two ways: (1) by providing a period of immunity from civil lawsuits to towns participating in the administrative process for demonstrating constitutional compliance (the exhaustion-of-administrative-remedies requirement); and, (2) for a town whose fair share housing plan secures substantive certification from COAH, by providing a period during which the municipality's implementing ordinances enjoy a presumption of validity in any ensuing exclusionary zoning litigation. The continued viability of both rewards is subject to COAH's required updating of municipal housing obligations and corresponding substantive and procedural rules.

COAH's rules governing the last round of municipal housing obligations expired in 1999. Since then COAH has failed twice to adopt updated regulations (Third Round Rules) for the present period of municipal housing obligations. Most recently, in September 2013, the Court affirmed the Appellate Division's invalidation of the second iteration of the Third Round Rules. 215 N.J. 578 (2013). In its September 2013 opinion, the Court set a five-month compliance period, and directed COAH to adopt rules by February 26, 2014. However, on February 26, 2014, COAH filed a motion for an extension of time. On March 14, 2014, this Court granted the extension and ordered COAH to take specific rule-promulgation steps, culminating in adoption of the required Third Round Rules by November 17, 2014. In the event COAH did not comply, the Order provided that the parties could return to this Court for relief, including lifting the FHA's administrative-exhaustion requirement.

When COAH failed to promulgate Third Round Rules by November 17, 2014, Fair Share Housing Center (FSHC) filed the instant motion pursuant to Rule 1:10-3 and the Court's March 14 Order permitting such motion practice. The Court heard oral argument on January 6, 2015, and COAH's representative admitted that COAH has not conducted or scheduled any meetings since its last meeting in October 2014, that it does not have any plans to meet further in an effort to adopt Third Round Rules, and that staff have not been directed to perform any work in furtherance of adoption of Third Round Rules.

**HELD:** The FHA's exhaustion-of-administrative-remedies requirement is dissolved until further order of the Court. The courts may resume their role as the forum of first resort for evaluating municipal compliance with Mount Laurel obligations, as provided in this opinion and the Court's corresponding Order. The effective date of the Court's Order is delayed by ninety days to effectuate an orderly transition to the judicial remedies authorized by the Court.

1. Rule 1:10-3 is a device to enable a litigant to enforce his or her rights. Relief does not require establishing that

the violator of an order acted with intention to disobey.  Demonstration of willful disobedience and lack of concern for the court's order is necessary for a finding of contempt, but irrelevant in a proceeding designed simply to enforce a judgment on a litigant's behalf.  Since the Court is not asked to impose any order against COAH, willful or contumacious conduct is not a prerequisite to providing relief under Rule 1:10-3 to a litigant seeking to protect its and third parties' interests in municipal compliance with constitutional affordable housing obligations.  (pp. 21-25).

2.  Here, the administrative forum is not capable of functioning as intended by the FHA due to the lack of lawful Third Round Rules.  Because there are no Third Round Rules, the FHA's administrative remedy for demonstrating constitutional compliance has been rendered futile.  Accordingly, towns must subject themselves to judicial review for constitutional compliance, as was the case before the FHA was enacted.  Pursuant to Rule 1:10-3, the Court holds that the courts may resume their role as the forum of first instance for evaluating municipal compliance with constitutional Mount Laurel obligations, as directed in the Court's opinion and accompanying order.  (pp. 25-27).

3.  The relief authorized is remedial of constitutional rights.  It will present an avenue for low- and moderate-income New Jersey citizens, and entities acting on their behalf, to challenge any municipality that is believed not to have developed a housing element and ordinances that bring the town into compliance with its fair share of regional present and prospective need for affordable housing.  It also will provide a municipality that had sought to use the FHA's mechanisms the opportunity to demonstrate constitutional compliance to a court's satisfaction before being declared noncompliant and then being subjected to the remedies available through exclusionary zoning litigation, including a builder's remedy.  (p. 27).

4.  In establishing a process by which towns can have their housing plans reviewed by the courts for constitutional compliance, the Court's goal is to provide a means by which towns can demonstrate compliance through submission of a housing plan and use of processes similar to those which would have been available through COAH for the achievement of substantive certification.  The end result is to achieve adoption of a municipal housing element and implementing ordinances deemed to be presumptively valid if thereafter subjected to challenge.  (pp. 31-32).

5.  The Court recognizes the various stages of municipal preparation to demonstrate Mount Laurel compliance that exist as a result of the long period of uncertainty attributable to the lack of valid Third Round Rules.  Accordingly, the Court establishes a transitional process before allowing exclusionary zoning actions to proceed against towns that had sought the FHA's protections.  There exist two classes of towns in that category.  Some towns had acted quickly in response to the earlier versions of Third Round Rules (before invalidated) and had been granted substantive certification by COAH.  Other towns were designated simply as "participating" in the COAH process.  Those two classes of municipalities require different treatment.  (pp. 26-28).

6.  During the first thirty days following the effective date of the Court's implementing order, the only actions that will be entertained by the courts will be declaratory judgment actions filed by any town that either (1) had achieved substantive certification from COAH under prior iterations of Third Round Rules before they were invalidated, or (2) had "participating" status before COAH.  If any such town does not file a declaratory judgment action during that period, an action may be brought against that town, provided the action's sole focus is on whether the town's housing plan meets its Mount Laurel obligations (a constitutional compliance challenge).  The court's evaluation of a town's plan that had received substantive certification, or that will be submitted to the court as proof of constitutional compliance, may result in the town's receipt of the judicial equivalent of substantive certification and accompanying protection as provided under the FHA.  (pp. 32-39).

7.  In all declaratory judgment and constitutional compliance cases brought before the courts, on notice and opportunity to be heard, the trial court may enter temporary periods of immunity prohibiting exclusionary zoning actions from proceeding pending a determination of the municipality's presumptive compliance with its affordable housing obligation as set forth in the opinion.  Grants of immunity shall be subject to periodic court review.  As provided in the opinion, only after a court has had the opportunity to fully address constitutional compliance and has found constitutional compliance wanting shall it permit exclusionary zoning actions and any builder's remedy to proceed in a given case.  (pp. 39-40).

8.  The Court provides examples of approved actions from earlier appellate decisions to guide the Mount Laurel-designated judges that will hear the actions pertaining to a town's housing plan.  The Court notes that judges should endeavor to secure, whenever possible, prompt voluntary compliance from municipalities.  If a town is determined

to be constitutionally noncompliant, then the court may authorize exclusionary zoning actions seeking a builder's remedy to proceed against the towns. (pp. 40-46).

9. Nothing in the Court's opinion should be understood to prevent COAH from fulfilling its statutory mission to adopt constitutional rules to govern municipalities' Third Round obligations in compliance with the FHA. Nor should the action taken by the Court be regarded as impeding the Legislature from considering alternative statutory remedies to the present FHA. (p. 47).

Relief in aid of litigants' rights is **GRANTED** as specifically authorized by this opinion and its accompanying order. The order shall take effect ninety days after its filing.

**JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON, and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion. CHIEF JUSTICE RABNER did not participate.**

IN THE MATTER OF THE ADOPTION
OF N.J.A.C. 5:96 AND 5:97 BY
THE NEW JERSEY COUNCIL ON
AFFORDABLE HOUSING.


            Argued January 6, 2015 – Decided March 10, 2015

            On motion in aid of litigants' rights from
            the judgment of this Court reported at 215
            N.J. 578 (2013).

            Kevin D. Walsh argued the cause for movant
            Fair Share Housing Center (Mr. Walsh,
            attorney; Mr. Walsh, Adam M. Gordon, Peter
            J. O'Connor, and Laura S. Smith-Denker, on
            the brief).

            Geraldine Callahan, Deputy Attorney General,
            argued the cause for respondent New Jersey
            Council on Affordable Housing (John J.
            Hoffman, Acting Attorney General of New
            Jersey, attorney).

            Stephen M. Eisdorfer argued the cause for
            respondent New Jersey Builders Association
            (Hill Wallack, attorneys).

            Jeffrey L. Kantowitz argued the cause for
            respondents Kenneth Martin, Alice Martin,
            and MTAE, Inc. (Law Office of Abe Rappaport,
            attorney).

            Jonathan E. Drill argued the cause for
            respondents Bernards Township, Clinton
            Township, Union Township, and Greenwich
            Township (Stickel, Koenig, Sullivan & Drill,
            attorneys).

            Jeffrey R. Surenian argued the cause for
            respondent Borough of Atlantic Highlands
            (Jeffrey R. Surenian and Associates,

                                1

attorneys; Mr. Surenian and Michael A. Jedziniak, on the brief).

Edward J. Buzak argued the cause for respondent New Jersey State League of Municipalities (The Buzak Law Group, attorneys).

JUSTICE LaVECCHIA delivered the opinion of the Court.

The Mount Laurel series of cases[1] recognized that the power to zone carries a constitutional obligation to do so in a manner that creates a realistic opportunity for producing a fair share of the regional present and prospective need for housing low- and moderate-income families.  The Legislature enacted the Fair Housing Act of 1985 (FHA or the Act), N.J.S.A. 52:27D-301 to -329, to assist in municipal compliance with that constitutional obligation.  The FHA created the Council on Affordable Housing (COAH), which was designed to provide an optional administrative alternative to litigating constitutional compliance through civil exclusionary zoning actions.  Under the FHA, towns are free to remain in the judicial forum should they prefer it as the means to resolve any disputes over their constitutional obligations.

That said, the FHA clearly prefers the administrative forum, and its special processes, for addressing constitutional

---

[1] S. Burlington Cnty. NAACP v. Twp. of Mount Laurel, 92 N.J. 158 (1983); S. Burlington Cnty. NAACP v. Twp. of Mount Laurel, 67 N.J. 151, appeal dismissed and cert. denied, 423 U.S. 808, 96 S. Ct. 18, 46 L. Ed. 2d 28 (1975).

affordable housing obligations.  Generally stated, the FHA encourages and rewards voluntary municipal compliance.  The Act encourages compliance by compelling COAH to establish and periodically update presumptive constitutional housing obligations for each municipality and to identify the permissible means by which a town's proposed affordable housing plan, housing element, and implementing ordinances can satisfy its obligation.  The Act rewards compliance in two ways:  (1) by providing a period of immunity from civil lawsuits to towns participating in the administrative process for demonstrating constitutional compliance (the exhaustion-of-administrative-remedies requirement); and, (2) for a town whose fair share housing plan secures substantive certification from COAH, by providing a period during which the municipality's implementing ordinances enjoy a presumption of validity in any ensuing exclusionary zoning litigation.  The continued viability of both rewards is subject to COAH's required updating of municipal housing obligations and corresponding substantive and procedural rules.

COAH's rules governing the last round of municipal housing obligations expired in 1999 (Second Round Rules).  Since then COAH has failed twice to adopt updated regulations -- Third Round Rules -- for the present period of municipal housing obligations.  The history of the state of affairs leading to our

3

Order dated March 14, 2014, is summarized hereafter. That Order required COAH to take specific rule-promulgation steps, culminating in adoption of the required Third Round Rules by November 17, 2014. In the event COAH did not comply, parties were told they could return to this Court for relief, including lifting the FHA's administrative-exhaustion requirements.

Fair Share Housing Center (FSHC) filed the present motion in aid of litigants' rights because COAH failed to promulgate the Third Round Rules. We thus are in the exceptional situation in which the administrative process has become nonfunctioning, rendering futile the FHA's administrative remedy. The FHA's exhaustion-of-administrative-remedies requirement, which staves off civil actions, is premised on the existence of a functioning agency, not a moribund one.

Due to COAH's inaction, we agree that there no longer exists a legitimate basis to block access to the courts. Parties concerned about municipal compliance with constitutional affordable housing obligations are entitled to such access, and municipalities that believe they are constitutionally compliant or that are ready and willing to demonstrate such compliance should be able to secure declarations that their housing plans and implementing ordinances are presumptively valid in the event they later must defend against exclusionary zoning litigation.

It is necessary for this Court to establish an orderly means for such proceedings to commence.

We will establish a transitional process and not immediately allow exclusionary zoning actions to proceed in recognition of the various stages of municipal preparation that exist as a result of the long period of uncertainty attributable to COAH's failure to promulgate Third Round Rules. During the first thirty days following the effective date of our implementing order, the only actions that will be entertained by the courts will be declaratory judgment actions filed by any town that either (1) had achieved substantive certification from COAH under prior iterations of Third Round Rules before they were invalidated, or (2) had "participating" status before COAH. Assuming any such town waits and does not file a declaratory judgment action during that thirty-day period, an action may thereafter be brought by a party against that town, provided the action's sole focus is on whether the town's housing plan meets its Mount Laurel obligations (a constitutional compliance challenge). The court's evaluation of a town's plan that had received substantive certification, or that will be submitted to the court as proof of constitutional compliance, may result in the town's receipt of the judicial equivalent of substantive certification and accompanying protection as provided under the FHA.

In sum, the judicial processes authorized herein reflect as closely as possible the FHA's processes and provide the means for a town transitioned from COAH's jurisdiction to judicial actions to demonstrate that its housing plan satisfies Mount Laurel obligations. Our decision today sets forth in detail the manner in which civil actions may proceed, following a ninety-day delay in the effective date of the implementing order accompanying this opinion. The delay allows all parties to prepare for the actions that are authorized pursuant to that order.

Importantly, nothing herein should be understood to prevent COAH from fulfilling its statutory mission to adopt constitutional rules to govern municipalities' Third Round obligations in compliance with the FHA. Nor should the action taken by this Court, in the face of COAH's failure to fulfill its statutory mission, be regarded as impeding the Legislature from considering alternative statutory remedies to the present FHA. See In re Adoption of N.J.A.C. 5:96 & 5:97, 215 N.J. 578, 612, 616-17 (2013).

Our order effectively dissolves, until further order, the FHA's exhaustion-of-administrative-remedies requirement. Further, as directed, the order allows resort to the courts, in the first instance, to resolve municipalities' constitutional obligations under Mount Laurel.

6

I.

In 1975, this Court prohibited the discriminatory use of zoning powers and mandated that each developing municipality "must, by its land use regulations, make realistically possible the opportunity for an appropriate variety and choice of housing for all categories of people who may desire to live there, of course including those of low and moderate income." S. Burlington Cnty. NAACP v. Twp. of Mount Laurel (Mount Laurel I), 67 N.J. 151, 179, 187, appeal dismissed and cert. denied, 423 U.S. 808, 96 S. Ct. 18, 46 L. Ed. 2d 28 (1975). In 1983, the Court reaffirmed the constitutional obligation that towns provide "a realistic opportunity for the construction of [their] fair share of the present and prospective regional need for low and moderate income housing." S. Burlington Cnty. NAACP v. Twp. of Mount Laurel (Mount Laurel II), 92 N.J. 158, 205 (1983) (citing Mount Laurel I, supra, 67 N.J. at 174). Because the Legislature had not acted to effectuate Mount Laurel I's recognition of municipalities' constitutional zoning obligations, the Court fashioned a judicial remedy. Id. at 289-91. That remedy created a special litigation track for exclusionary zoning cases and permitted, ultimately, a "builder's remedy" by which builders could file suit for the opportunity to construct housing at higher densities than a municipality otherwise would allow. See id. at 279-81, 287-93.

7

In response, the Legislature enacted the FHA, which created COAH and vested primary responsibility for assigning and determining municipal affordable housing obligations in that body. N.J.S.A. 52:27D-305, -307. COAH is required to enact regulations that establish, and thereafter update, statewide affordable housing need; to assign to each municipality an affordable housing obligation for its designated region; and to identify the delivery techniques available to municipalities in addressing the assigned obligation. N.J.S.A. 52:27D-307, -308. The FHA includes a process for substantive certification, which, if granted, renders a municipality's housing element and ordinances presumptively valid in any exclusionary zoning litigation for a finite period. N.J.S.A. 52:27D-313, -317; see also Hills Dev. Co. v. Twp. of Bernards, 103 N.J. 1, 19-20, 33-35 (1986) (detailing certification procedure).

The FHA also transferred pending Mount Laurel litigation to COAH for resolution through an administrative process. Hills, supra, 103 N.J. at 20. The FHA and its operative regulations established a process for bringing municipalities into compliance. The matter presently before this Court concerns COAH's failure to adopt regulations applicable to the third round of affordable housing obligations -- the Third Round Rules.

8

As previously noted, promulgation of Third Round Rules was due in 1999, but, when the Second Round Rules expired, COAH had not proposed the new regulations. See 31 N.J.R. 1480 (June 7, 1999) (noting that second-round obligations expired on June 6, 1999). In August 2004, the Appellate Division characterized COAH's delay as frustrating the public policies embodied by the Mount Laurel line of cases. In re Six Month Extension of N.J.A.C. 5:91, 372 N.J. Super. 61, 95-96 (App. Div. 2004), certif. denied, 182 N.J. 630 (2005). The panel warned that the failure to adopt valid rules would "free interested parties from the constraints" of the administrative process. Id. at 105. COAH later adopted a set of Third Round Rules on December 20, 2004. 36 N.J.R. 5895(a).

On January 25, 2007, the Appellate Division affirmed portions of COAH's proposed methodology, but invalidated other aspects of the Third Round Rules. In re Adoption of N.J.A.C. 5:94 & 5:95, 390 N.J. Super. 1, 86-87 (App. Div.), certif. denied, 192 N.J. 71 (2007). That opinion remanded the matter to COAH for promulgation of regulations compliant with the Mount Laurel doctrine and the FHA and gave the agency six months to do so (i.e., by July 2007). Id. at 88. The Appellate Division granted COAH two extensions, and COAH thereafter promulgated the revised rules. 40 N.J.R. 237(a) (Jan. 22, 2008); 40 N.J.R. 515(a) (Jan. 22, 2008).

On October 8, 2010, the Appellate Division concluded that COAH's revised regulations suffered from "many of the same deficiencies as the original [T]hird [R]ound [R]ules" and invalidated substantial portions of COAH's second set of Third Round Rules. In re Adoption of N.J.A.C. 5:96 & 5:97, 416 N.J. Super. 462, 471 (App. Div. 2010). The panel again remanded to COAH for the adoption of new Third Round Rules and specifically directed COAH to use a methodology for determining prospective need similar to the methodologies used in the prior rounds. Id. at 487. The panel also ordered COAH to complete the task within five months. Id. at 511. We subsequently granted certification. 205 N.J. 317 (2011).

Our Court ultimately affirmed the Appellate Division's invalidation of the Third Round Rules. In re Adoption of N.J.A.C. 5:96 & 5:97, supra, 215 N.J. at 586. In so doing, we stated:

> Rules to govern the third round cannot wait further while time is lost during legislative deliberations on a new affordable housing approach. A remedy must be put in place to eliminate the limbo in which municipalities, New Jersey citizens, developers, and affordable housing interest groups have lived for too long. Accordingly, we endorse the Appellate Division's quick deadline for reimposing third-round obligations based on the previous rounds' method of allocating fair share obligations among municipalities.
>
> [Id. at 620.]

10

Incorporating the Appellate Division's five-month compliance period, our September 2013 opinion directed COAH to adopt rules by February 26, 2014. Ibid.

On February 26, 2014, COAH filed a motion for an extension of time. The motion was supported by a certification from COAH's Chairperson, requesting an extension until May 1, 2014, and specifically stating that COAH had reviewed and was continuing to evaluate data to develop a third-round methodology. It has since come to light that COAH retained its primary consultant for the development of new regulations on February 6, 2014.

On March 14, 2014, after additional Appellate Division and Supreme Court proceedings,[2] the Court granted COAH's last motion for an extension, subject to specific conditions. __ N.J. __ (2014) (slip op. at 1-4). The March 14, 2014, Order directed COAH to meet firm deadlines for the adoption of the Rules and for each interim rule-making step required by the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -24. Ibid. The Court further ordered that if COAH did not adopt Third Round Rules by

_____

[2] When COAH's progress stalled and it appeared that compliance with the first extended timeframe would not be forthcoming, the Appellate Division entered an enforcement order, compelling certain meetings and reporting actions by COAH's members and threatening contempt proceedings against the individual members if violated. We vacated that order, substituting our Order of March 14, 2014.

11

November 17, 2014, the Court would entertain applications for relief, including "a request to lift the protection provided to municipalities through N.J.S.A. 52:27D-313."  Id. at __ (slip op. at 3-4).  The Court stated that "if such a request is granted, actions may be commenced on a case-by-case basis before the Law Division or in the form of 'builder[']s remedy' challenges."  Id. at __ (slip op. at 4).

On April 30, 2014, COAH's Board met and voted to propose its new Third Round Rules, which had been provided to the Board roughly twenty-four hours before the meeting.  The proposed Third Round Rules were published in the New Jersey Register on June 2.  46 N.J.R. 912(a)-1051 (June 2, 2014).  Although FSHC filed a motion in aid of litigants' rights seeking the Court's intervention in the rule-making process, the request was denied and that process continued.  Meanwhile, COAH held a public hearing on July 2 and received approximately 3000 comments before the public comment period closed on August 1.  Pursuant to the Court's March 14 Order, COAH was to adopt the Third Round Rules by October 22, and to publish the notice in the November 17 edition of the New Jersey Register.  However, at the October 20, 2014, meeting, the COAH members split 3-3 on the vote and Third Round Rules were not adopted.[3]

---

[3] During the public discussion, a Board member, John Winterstella, initially moved that the adoption of the Third

12

FSHC filed the instant motion pursuant to Rule 1:10-3 and the Court's language in the March 14 Order permitting such motion practice in the event that COAH failed to adopt Third Round Rules by November 17, 2014.  We set oral argument on the motion for January 6, 2015.

## II.

### A.

At oral argument, prior to hearing the parties on the merits of this matter, we asked COAH's representative from the Attorney General's Office to update the Court and parties on what COAH had done to advance the promulgation of Third Round Rules since its October 2014 meeting.  When setting the matter for argument, our order reminded COAH that nothing limited its continuing ability to adopt the required regulations.  Despite that reminder, COAH's representative admitted that COAH has not conducted or scheduled any further meetings since its October 2014 meeting, that it does not have any plans to meet further in an effort to adopt Third Round Rules, and that staff have not

Round Rules be tabled for sixty days, noting his belief that the proposed regulations would not comply substantively with this Court's orders.  The motion failed by a vote of 3-3.  Another Board member (Housing and Mortgage Finance Agency Executive Director Anthony Marchetta) moved to adopt the proposed Third Round Rules.  The Board again split 3-3, resulting in COAH's failure to adopt the regulations in time for transmission to the Office of Administrative Law (OAL) for publication in the November 17 New Jersey Register, as required by the APA for rule adoption.

been directed to perform any work in furtherance of adoption of Third Round Rules.  Those representations inform our view of the parties' positions.

FSHC argues that COAH has violated the Court's September 26, 2013, opinion and the March 2014 Order.  FSHC asserts that a court should grant a litigant enforcement-of-rights relief under Rule 1:10-3 "unless [the noncompliant] party is incapable of compliance."  (Citing P.T. v. M.S., 325 N.J. Super. 193, 218 (App. Div. 1999)).  Here, FSHC argues that COAH was capable of compliance because COAH had ample time to adopt compliant rules: the Appellate Division invalidated the last iteration of Third Round Rules in October 2010, over four years ago, and this Court affirmed, over one year ago, directing COAH to adopt new revised Third Round Rules within five months.  According to FSHC, that time period goes well beyond the time reasonably needed to prepare a fair share methodology that determines prospective need by means similar to the methodologies used in the prior rounds, especially in light of COAH's counsel's representation at oral argument before our Court that COAH could prepare revised regulations within thirty days.  FSHC asserts that, rather than complying with the Court's directive to propose regulations "based on the previous rounds' method," COAH hired consultants to develop a methodology "vastly different from the

[p]rior [r]ound regulations that this Court ordered COAH to use." FSHC contends that, as a result, draft regulations were not proposed until eight months after the Court's September 2013 judgment, and, ultimately, half of the Board believed that the proposed rules did not comply with the FHA or this Court's prior opinion.

Moreover, in support of its agency-noncompliance argument, FSHC emphasizes COAH's counsel's admissions to the Court about the agency's state of inaction. FSHC underscores that COAH has not conducted or scheduled any further meetings since its October 2014 meeting, has no plans to meet further in an effort to adopt Third Round Rules, and has not directed staff to perform any work in furtherance of the Rules' adoption.

In the event that the Court grants FSHC's application for relief from exhaustion of remedies before COAH, FSHC asks the Court to provide guidance with respect to the designation of a limited number of judges to hear exclusionary zoning actions filed in court. FSHC also asks that the second-round methodology, with limited modifications, be directed for use in such proceedings and that newly authorized judicial actions proceed expeditiously and on a notice-and-opportunity-to-be-heard basis.

C.

COAH argues that FSHC is not entitled to the extraordinary remedy of relief under Rule 1:10-3 because COAH has not been willfully contumacious. COAH maintains it "made all possible efforts to comply with the Court's order," meeting the initial deadlines for rule proposal, publication, and public comment. COAH contends that the public record demonstrates that its Board "neither ignored nor willfully violated" the Court's Order, but rather that it was "unable to comply" because the members did not agree on adoption. COAH argues that this outcome was not willful, but instead a risk inherent in any administrative process where diverse views are represented.

COAH further maintains that returning Mount Laurel litigation to trial courts would be punitive -- and thus contrary to the purpose of Rule 1:10-3 -- because it would expose towns to substantial litigation and would undermine the FHA's intent to provide alternatives to the use of builder's-remedy litigation to achieve fair share housing.

D.

The New Jersey Builders Association and Martin and MTAE, Inc., support FSHC's motion and largely adopt FSHC's legal arguments. They add that Mount Laurel litigation should be returned to the trial courts because low- and moderate-income families are without a forum to adjudicate municipal housing obligations or compliance matters. These parties also contend

16

that the administrative stalemate has permitted municipalities to "shelter themselves" from suit under COAH's jurisdiction without providing any additional affordable housing in years. They urge the Court to fashion relief that will require courts to examine what towns have done to date in attempting to satisfy their constitutional obligations.

The remaining parties view with disfavor the prospect of a return to the courts to resolve constitutional compliance with Mount Laurel obligations. Accordingly, those parties first argue that COAH should be compelled to take action completing the rule-making process. The remaining parties also offer views on how civil actions regarding municipalities' constitutional compliance should proceed if such actions must commence. Those views encompass general ideas for the actions as well as specifics regarding the means by which municipalities could obtain immunity from a builder's remedy in any subsequent exclusionary zoning action.

Bernards Township, Clinton Township, Union Township, and Greenwich Township (collectively the Four Towns) express concern about the complex questions that would be thrust upon judges if exclusionary zoning litigation were to return to the Law Division. For example, they contend that trial courts would be tasked with determining whether a municipality's fair share allocation will be "cumulative" or applicable only to one

17

compliance period. The Four Towns also contend that adjudicating such Mount Laurel matters would require courts to confront the myriad differences between the methodologies utilized in the prior rounds and those contained in the various iterations of COAH's Third Round Rules.

With regard to immunity, the Four Towns generally urge the Court to adopt the immunity procedure established in earlier pre-FHA litigation and discussed in J.W. Field Co. v. Township of Franklin, 204 N.J. Super. 445 (App. Div. 1985), and in this Court's Hills opinion. Specifically, they ask that the 314 municipalities, which had submitted to COAH's jurisdiction and were participating in the administrative process but had not been awarded substantive certification by COAH under the earlier Third Round Rules before the same were invalidated, be allowed sixty days to seek immunity by filing declaratory judgment actions. It is proposed that such actions be allowed to be filed ex parte. If a municipality files such an action within that time frame, the Four Towns ask that immunity remain in effect while the trial judge establishes the municipality's affordable housing obligation and compliance mechanisms, and also while the municipality works to comply with those standards. After the sixty-day period expires, municipalities still could file declaratory judgment actions, but would be immune from suit only as to entities that had not already

18

initiated litigation.  Trial judges would be empowered to rescind an immunity order upon a showing that the municipality had abused the process.

The Borough of Atlantic Highlands (Atlantic Highlands) prefers that COAH be given a "reasonable amount of time" to finish the rule-making process, but if this Court were to grant FSHC's requested relief, Atlantic Highlands asks for the immunity mechanism endorsed by the Four Towns.  Atlantic Highlands notes that it has submitted to COAH two iterations of Third Round Affordable Housing Plans, but COAH has not approved them because the agency's prior Third Round Rules were invalidated.  Atlantic Highlands also notes that thirty municipalities have passed resolutions urging COAH to comply with the Court's deadlines, and it asks that municipalities not be punished for COAH's failure to adopt the latest set of proposed rules.

Finally, the New Jersey State League of Municipalities (NJLM) argues that the 314 municipalities that have submitted affordable housing plans to COAH should not forfeit their protection from suit.  According to NJLM, exclusionary zoning litigation would punish the municipalities, which are not responsible for COAH's most recent failure to adopt compliant Third Round Rules.

19

Notably, NJLM proposes an alternate solution, arguing that COAH has expended significant resources in developing the most recent proposed regulations, which efforts should not be wasted. NJLM suggests that the Court appoint "a former high-ranking policy-making official" to recruit three "professional planners" to assist in reviewing COAH's proposed Third Round Rules, the 3000 public comments, and any responses prepared by COAH's staff. NJLM proposes that this Court authorize those planners to revise the proposed Third Round Rules for review by the Court-selected "policy-making official." If the policy maker is satisfied, NJLM further proposes that he or she would present the revised regulations to this Court for approval, and for entry of an order directing COAH to adopt the Third Round Rules in that form.

III.

A.

In light of COAH's representations to this Court that reveal its failure to take any steps after its October 2014 deadlocked meeting on Third Round Rules -- specifically the absence of any plan to schedule further meetings on the Rules and the manifest lack of intention to continue work on the Rules (as evidenced by the absence of any such direction to staff) -- the clarity of COAH's inaction is apparent. Those parties arguing for giving COAH more time have had their argument

20

undermined by the starkness of COAH's posture. We reject the argument that relief should be withheld in order to allow COAH even "more time" than it has already been given.

COAH has had fifteen years to adopt Third Round Rules as it is required to do in accordance with its statutory mission. It has been under several orders of the Appellate Division and this Court directing it to adopt Third Round Rules using a known methodology by specific deadlines. It has not done so. More time is not a viable response to the request for litigants' relief under Rule 1:10-3.

COAH is noncompliant with this Court's orders and underlying September 2013 decision. COAH has failed to respond (1) to the requirements of the last in the series of judicial orders entered against it and (2) to its statutory duties that directly affect the fulfillment of constitutional obligations. Movant seeks relief. Importantly, we again note that the relief sought from the present administrative stalemate does not restrict COAH from performing its responsibilities should it eventually determine to do so.

We thus turn specifically to the relief requested under Rule 1:10-3.

B.

Rule 1:10-3 is, at bottom, a device to enable a litigant to enforce his or her rights.

21

Although Rule 1:10-3 encompasses the notion of civil contempt, we have expressly stated that "we view the process [under Rule 1:10-3] as one of relief to litigants." In re Daniels, 118 N.J. 51, 60 (per curiam) (emphasis added) (citing R. 1:10-5, now R. 1:10-3), cert. denied, 498 U.S. 951, 111 S. Ct. 371, 112 L. Ed. 2d 333 (1990). The focus being on the vindication of litigants' rights, relief sought pursuant to Rule 1:10-3 does not necessarily require establishing that the violator of an order acted with intention to disobey. Indeed, courts have recognized that "demonstration of a mens rea, wilful disobedience and lack of concern for the order of the court, is necessary for a finding of contempt, but irrelevant in a proceeding designed simply to enforce a judgment on a litigant's behalf." Lusardi v. Curtis Point Prop. Owners Ass'n, 138 N.J. Super. 44, 49 (App. Div. 1975) (emphasis added); see also N.J. Dep't of Health v. Roselle, 34 N.J. 331, 347 (1961) ("The Appellate Division correctly held that upon a litigant's application for enforcement of an injunctive order, relief should not be refused merely because the violation was not willful.").

It bears repeating in connection with this present application that our Court Rules generally are to be construed and applied to secure a just determination and to achieve simplicity in procedure. R. 1:1-2. That admonition has

22

particular force when it comes to assisting a litigant in securing vindication of rights.

The Court Rules overall evince an intent toward flexibility when the enforcement of rights is at stake. They provide various means for securing relief and allow for judicial discretion in fashioning relief to litigants when a party does not comply with a judgment or order. In addition to the mechanism of Rule 1:10-3, Rule 4:59-2(a) provides related support for assisting a litigant in securing relief:

> If a judgment or order directs a party to perform a specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of such defaulting party by some other person appointed by the court, and the act when so done shall have like effect as if done by the defaulting party.
>
> [See also Roselin v. Roselin, 208 N.J. Super. 612, 618 (App. Div.) (citing R. 4:59-2(a) when noting alternatives available to trial court for enforcing party's rights), certif. denied, 105 N.J. 550 (1986).]

In Roselin, supra, for example, Judge Pressler invoked Rule 1:10-3's predecessor rule when assessing the alternatives available to a trial court where a party failed to sign a contract as ordered. 208 N.J. Super. at 618. Highlighting the hardship that the failure was foisting on another of the contract's parties, the panel observed that "[i]ntervening rights of innocent third persons have arisen," id. at 617, and

23

declared that the innocent's "rights must be enforced," id. at 618 (citing R. 1:10-5).  Judge Pressler noted Rule 4:59-2(a)'s ability to secure relief through the directed actions of others, which adds to a court's flexibility when vindicating the rights of litigants.  See ibid.

In sum, then, although punitive or coercive relief under the Rule cannot be used against one who is not a willful violator of a judgment, see, e.g., Schochet v. Schochet, 435 N.J. Super. 542, 548-49 (App. Div. 2014) (citing Pasqua v. Council, 186 N.J. 127, 141 n.2 (2006), for same and noting "objective of [Rule 1:10-3] hearing is simply to determine whether . . . failure [to comply with an order] was excusable or willful"); Milne v. Goldenberg, 428 N.J. Super. 184, 199 (App. Div. 2012) (upholding imposition of community service under Rule 1:10-3 against plaintiff where record established willful noncompliance), that does not foreclose the vindication of litigants' rights through other forms of non-punitive and non-coercive orders entered pursuant to Rule 1:10-3's authority enabling the enforcement of rights.

In this matter, COAH is without a firm basis to dispute FSHC's ability to bring this motion in aid of litigants' rights. Willful or contumacious conduct by COAH is not a prerequisite to providing the form of litigants' relief sought here under Rule 1:10-3.  We are not asked to impose any order against COAH.

When the application is made seeking no punitive or coercive action against the respondent agency, Rule 1:10-3 is an appropriate vehicle for judicial assistance in enforcing rights. There is no question that COAH failed to comply with this Court's March 2014 Order that was designed to achieve the promulgation of Third Round Rules and the maintenance of a functioning COAH. In the face of COAH's knowing inaction to an order that required action, Rule 1:10-3 permits FSHC to protect its and third parties' interests in municipal compliance with constitutional affordable housing obligations.

The present application reflects an acknowledgment of the obvious: the administrative forum is not capable of functioning as intended by the FHA due to the lack of lawful Third Round Rules assigning constitutional obligations to municipalities. We are asked, essentially, to permit resumed direct access to the courts for the vindication of rights, unless and until a viable FHA administrative agency remedy is restored. Because there are no Third Round Rules, the FHA-established alternative for demonstrating constitutional compliance is absent. Constitutional compliance presently cannot be evaluated under COAH's jurisdiction; the FHA's exhaustion-of-administrative-remedies requirement has been rendered futile. See AMG Assocs. v. Twp. of Springfield, 65 N.J. 101, 109 n.3 (1974) (noting that

exhaustion of administrative remedies is unnecessary if pursuing those remedies would be futile).

Accordingly, we conclude that towns must subject themselves to judicial review for constitutional compliance, as was the case before the FHA was enacted. Under our tripartite form of government, the courts always present an available forum for redress of alleged constitutional violations or, alternatively, for towns seeking affirmative declarations that their zoning actions put them in compliance with Mount Laurel obligations. As noted in Hills when approving the fledgling FHA program, if the FHA proves that it achieves nothing but delay, the courts would resume their role in affordable housing litigation. Supra, 103 N.J. at 23.

Therefore, under the authority of Rule 1:10-3, we hold that the courts may resume their role as the forum of first instance for evaluating municipal compliance with Mount Laurel obligations, as hereinafter directed. In the event of a municipality's inability or failure to adopt a compliant plan to a court's satisfaction, the court may consider the range of remedies available to cure the violation, consistent with the steps outlined herein and in our accompanying order. We establish a transitional process before allowing exclusionary zoning actions against towns that had sought to use the FHA's mechanisms in recognition of the various stages of municipal

26

preparation that exist as a result of the long period of uncertainty attributable to COAH's failure to promulgate Third Round Rules.

The relief authorized is remedial of constitutional rights. It will present an avenue for low- and moderate-income New Jersey citizens, and entities acting on their behalf, to challenge any municipality that is believed not to have developed a housing element and ordinances that bring the town into compliance with its fair share of regional present and prospective need for affordable housing. And, it will provide a municipality that had sought to use the FHA's mechanisms the opportunity to demonstrate constitutional compliance to a court's satisfaction before being declared noncompliant and then being subjected to the remedies available through exclusionary zoning litigation, including a builder's remedy.

We next turn to the details of transitioning to the judicial forum.

IV.

A.

In light of our 2013 decision invalidating the growth share based Third Round Rules that COAH had adopted, returning constitutional compliance issues to the courts and no longer enforcing the FHA's exhaustion-of-administrative-remedies requirement will have the effect of upending expectations of

27

municipalities that had sought the protection of COAH's processes. Some even had secured from COAH substantive certification based on prompt action taken in response to the previous iterations of Third Round Rules before they were invalidated.

We recognize, as a matter of basic fairness, that there must be a brief delay before our order implementing this decision shall take effect and actions involving a municipality's constitutional compliance may proceed in the judicial forum. We therefore delay the effective date of our accompanying order by ninety days to effectuate an orderly transition to the judicial remedies authorized herein.

## B.

### 1.

There exist two classes of towns that sought to make use of the administrative remedy offered through the FHA. Some towns had acted quickly in response to the earlier versions of Third Round Rules (before invalidated) and had been granted substantive certification. Other towns were designated simply as "participating" in the COAH process. Those two classes of municipalities require different treatment.

We are informed by the parties that as many as sixty towns may have been granted substantive certification under earlier versions of the Third Round Rules. The Legislature plainly

28

intended that the grant of substantive certification be significant: the FHA attaches a presumption of validity for a finite period to a municipality's housing element and ordinances enacted in furtherance thereof once the municipality has been granted substantive certification. N.J.S.A. 52:27D-313, -317. To rebut the presumption of validity under regular operation of the FHA, a plaintiff must prove by clear and convincing evidence that the municipality's housing element and its ordinances do not provide for a realistic opportunity for the provision of the municipality's fair share. N.J.S.A. 52:27D-317; see also N.J.S.A. 52:27D-313 (filing of housing element permits municipality to seek substantive certification from COAH or to institute declaratory judgment action seeking grant of repose from suit). We must determine how towns that achieved substantive certification under later-invalidated Third Round Rules should be treated in the transition to civil actions.

We also are informed that more than 300 towns had submitted a resolution of participation with COAH sufficient for COAH to have recognized those municipalities as "participating." See N.J.S.A. 52:27D-309 (allowing municipality to notify COAH of intent to submit its fair share housing plan to COAH by adoption of "resolution of participation"). Such status brings a municipality under COAH's jurisdiction and thereby frees it for a period of time from suit in court if it achieves certain

milestones toward a grant of substantive certification. N.J.S.A. 52:27D-309(b) exempts parties from the exhaustion-of-administrative-remedies requirement if a participating municipality fails to file its fair share plan and housing element. Also, the exhaustion obligation automatically expires pursuant to N.J.S.A. 52:27D-318 when a municipality misses the deadlines for submitting its housing element.

We further are informed through parties' submissions that COAH has been maintaining participating towns in an ongoing holding pattern, allowing such towns to enjoy insulation from suit, pending the development of valid Third Round Rules. We are not aware of the progress or stage of submissions by the various towns in such status before COAH. It is not this Court's function to address those individual circumstances. A town's efforts to satisfy its housing obligations will have to be assessed now by courts that will hear actions on constitutional compliance.

However, we are asked to provide for a means in this transition by which a town may obtain protection from suit if the town had made an effort to comply with COAH's procedures. For completeness, we note that approximately 200 towns never subjected themselves to COAH's jurisdiction, choosing instead to remain open to civil actions in the courts. Those towns will

30

continue to be subject to exclusionary zoning actions, as they have been since inception of Mount Laurel obligations.

2.

In establishing an orderly process by which towns can have their housing plans reviewed by the courts for constitutional compliance, we note first that a municipality should be permitted to choose either to seek such a review affirmatively or to be subjected to such a review if the municipality determines to wait until its housing plan is challenged as noncompliant with Mount Laurel obligations.  If a municipality seeks to obtain an affirmative declaration of constitutional compliance, it will have to do so on notice and opportunity to be heard to FSHC and interested parties.  Courts assessing the notice requirement should understand that the term "interested parties" presumptively includes, at a minimum, the entities on the service list in this matter.  Ex parte applications, even for initial immunity pending review, shall not be permitted under any circumstance.

Second, it bears emphasizing that the process established is not intended to punish the towns represented before this Court, or those that are not represented but which are also in a position of unfortunate uncertainty due to COAH's failure to maintain the viability of the administrative remedy.  Our goal is to establish an avenue by which towns can demonstrate their

31

constitutional compliance to the courts through submission of a housing plan and use of processes, where appropriate, that are similar to those which would have been available through COAH for the achievement of substantive certification. Those processes include conciliation, mediation, and the use, when necessary, of special masters. The end result of the processes employed by the courts is to achieve adoption of a municipal housing element and implementing ordinances deemed to be presumptively valid if thereafter subjected to challenge by third parties. Our approach in this transition is to have courts provide a substitute for the substantive certification process that COAH would have provided for towns that had sought its protective jurisdiction. And as part of the court's review, we also authorize, as more fully set forth hereinafter, a court to provide a town whose plan is under review immunity from subsequently filed challenges during the court's review proceedings, even if supplementation of the plan is required during the proceedings.

With those overriding principles in mind, we establish the following procedures for the two classes of municipalities left stranded by COAH's failure to adopt valid Third Round Rules.

## C.

We first consider the circumstances of the municipalities that made the effort to comply promptly with the Third Round

32

Rules and that received a grant of substantive certification. Ordinarily, N.J.S.A. 52:27D-313 and -317 would afford the ordinances implementing the housing elements of such municipalities a strong presumption of validity in any exclusionary zoning action and, thus, would provide powerful protection from a builder's remedy. However, to provide that same presumption of validity based solely on substantive certification in these circumstances would be to ignore our own acknowledgment of the problems with the "growth share" methodology on which the invalidated Third Round Rules were premised.

COAH's previous Third Round Rules required COAH initially to calculate the projected growth share obligation of a municipality, but then permitted subsequent adjustment through COAH's biennial review process such that a municipality's actual obligation reflected the "'actual residential growth and employment growth in the municipality.'" In re Adoption of N.J.A.C. 5:96 & 5:97, supra, 215 N.J. at 604 (quoting N.J.A.C. 5:96-10.1(a)). "Thus, even if a municipality were allocated a large projected growth share obligation, if growth fell below that rate, its actual growth share obligation would be reduced to reflect that slowed residential and job growth." Id. at 605. We determined that the result was invalid Third Round Rules predicated on non-region-specific housing data and devoid of the

"definitive quantitative obligations to be fulfilled within fixed periods" that were envisioned by Mount Laurel II and called for by the FHA. Ibid.

Because municipalities that received a grant of substantive certification promulgated housing plans in compliance with the invalidated growth share based Third Round Rules, additional court review of such towns' housing plans will be necessary. The ordinances adopted by any such municipality, in furtherance of an approved housing element, must be evaluated to determine if they provide for a realistic opportunity for the municipality to achieve its "fair share of the present and prospective regional need for low and moderate income housing." Mount Laurel II, supra, 92 N.J. at 205 (citing Mount Laurel I, supra, 67 N.J. at 174). Supplementation of a plan may be necessary to ensure to the court's satisfaction that the town has provided a realistic opportunity for its fair share of present and prospective regional affordable housing need in keeping with prior rounds' methodologies. The considerations to be employed in that analysis are addressed in Part V., infra.

That said, towns in this category may choose affirmatively to seek, through a declaratory judgment action filed on notice to FSHC and interested parties, a court order declaring its housing element and implementing ordinances -- as is or as to be supplemented -- constitutionally sufficient. We also

34

acknowledge that a municipality that had received a grant of substantive certification may elect to wait to be sued. In either case, while not entitled to the statutory presumption of validity the FHA normally would provide, these towns deserve an advantage in the judicial review that shall take place. Implemented ordinances should not be lightly disturbed unless necessary; supplemental actions to secure compliance with newly calculated prospective need may provide a preferred course for obtaining constitutional compliance.

While reviewing for constitutional compliance the ordinances of a town that achieved substantive certification, courts should be generously inclined to grant applications for immunity from subsequently filed exclusionary zoning actions during that necessary review process, unless such process is unreasonably protracted. As courts adapted processes to manage the multiplicity of pre-FHA filed Mount Laurel actions, see, e.g., J.W. Field, supra, 204 N.J. Super. 445, the present day courts handling these new matters should employ similar flexibility in controlling and prioritizing litigation. We repose such flexibility in the Mount Laurel-designated judges in the vicinages, to whom all Mount Laurel compliance-related matters will be assigned post-order, and trust those courts to assiduously assess whether immunity, once granted, should be withdrawn if a particular town abuses the process for obtaining

a judicial declaration of constitutional compliance.  Review of immunity orders therefore should occur with periodic regularity and on notice.

Accordingly, and in sum, following the ninety-day delay in the effective date of our accompanying order, all municipalities will have an additional thirty-day period in which to file actions if they so choose, on notice and opportunity to be heard as described earlier, affirmatively seeking to demonstrate constitutional compliance.  After that thirty-day period expires, a challenge to a town's constitutional compliance may be filed against a municipality by FSHC or any other interested party.  Only constitutional compliance actions may proceed initially as against a town with substantive certification from COAH.  No builder's remedy shall be authorized to proceed against any such town unless a court determines that the substantive certification that was granted is invalid, no constitutionally compliant supplementing plan is developed and approved by the court after reasonable opportunity to do so, and the court determines that exclusionary zoning actions, including actions for a builder's remedy, are appropriate and may proceed in a given case.

D.

The procedure shall differ for those towns that had only "participating" status with COAH.  If a town had devised a

36

housing element and took action toward adopting ordinances in furtherance of its plan, then we would expect a reviewing court to view more favorably such actions than that of a town that merely submitted a resolution of participation and took few or perhaps no further steps toward preparation of a formal plan demonstrating its constitutional compliance.

We recognize that not all towns that had only "participating" status may have well-developed plans to submit to the court initially. A town in such circumstances poses a difficult challenge for a reviewing court, particularly when determining whether to provide some initial period of immunity while the town's compliance with affordable housing obligations is addressed. To assist courts with this category of town, we take our lead from the FHA.

Towns that were in "participating" status before COAH and that pursuant to our order now affirmatively come before the courts seeking to obtain approval of an affordable housing plan should receive like treatment to that which was afforded by the FHA to towns that had their exclusionary zoning cases transferred to COAH when the Act was passed. See N.J.S.A. 52:27D-316. Such towns received insulating protection due to COAH's jurisdiction provided that they prepared and filed a housing element and fair share plan within five months. Ibid. Similarly, towns that were in "participating" status before COAH

and that now affirmatively seek to obtain a court declaration that their affordable housing plans are presumptively valid should have no more than five months in which to submit their supplemental housing element and affordable housing plan. During that period, the court may provide initial immunity preventing any exclusionary zoning actions from proceeding.

As in the case of the towns that had been awarded substantive certification from COAH, the "participating" towns will have the choice to proceed with their own actions during the thirty-day period post the effective date of our order before which challenges to constitutional compliance may be brought by FSHC or other interested parties. If a town elects to wait until its affordable housing plan is challenged for constitutional compliance, immunity requests covering any period of time during the court's review shall be assessed on an individualized basis. The five-month protected period for submitting a housing element and plan, identified earlier, has no parallelism in this setting. In determining whether to grant such a town a period of immunity while responding to a constitutional compliance action, the court's individualized assessment should evaluate the extent of the obligation and the steps, if any, taken toward compliance with that obligation. In connection with that, the factors that may be relevant, in addition to assessing current conditions within the community,

include whether a housing element has been adopted, any activity that has occurred in the town affecting need, and progress in satisfying past obligations.

Thus, in all constitutional compliance cases to be brought before the courts, on notice and opportunity to be heard, the trial court may enter temporary periods of immunity prohibiting exclusionary zoning actions from proceeding pending the court's determination of the municipality's presumptive compliance with its affordable housing obligation. Immunity, once granted, should not continue for an undefined period of time; rather, the trial court's orders in furtherance of establishing municipal affordable housing obligations and compliance should include a brief, finite period of continued immunity, allowing a reasonable time as determined by the court for the municipality to achieve compliance.

In the end, a court reviewing the submission of a town that had participating status before COAH will have to render an individualized assessment of the town's housing element and affordable housing plan based on the court's determination of present and prospective regional need for affordable housing applicable to that municipality. A preliminary judicial determination of the present and prospective need will assist in assessing the good faith and legitimacy of the town's plan, as proposed and as supplemented during the processes authorized

under the FHA -- conciliation, mediation, and use of special masters -- and employed in the court's discretion. The court will be assisted in rendering its preliminary determination on need by the fact that all initial and succeeding applications will be on notice to FSHC and other interested parties. Only after a court has had the opportunity to fully address constitutional compliance and has found constitutional compliance wanting shall it permit exclusionary zoning actions and any builder's remedy to proceed.

V.

The process developed herein is one that seeks to track the processes provided for in the FHA. Doing so will facilitate a return to a system of coordinated administrative and court actions in the event that COAH eventually promulgates constitutional Third Round Rules that will allow for the reinstitution of agency proceedings.

The judicial role here is not to become a replacement agency for COAH. The agency is sui generis -- a legislatively created, unique device for securing satisfaction of Mount Laurel obligations. In opening the courts for hearing challenges to, or applications seeking declarations of, municipal compliance with specific obligations, it is not this Court's province to create an alternate form of statewide administrative decision maker for unresolved policy details of replacement Third Round

40

Rules, as was proposed by NJLM. The courts that will hear such declaratory judgment applications or constitutional compliance challenges will judge them on the merits of the records developed in individual actions before the courts. However, certain guidelines can be gleaned from the past and can provide assistance to the designated Mount Laurel judges in the vicinages.

First, as we said in In re Adoption of N.J.A.C. 5:96 & 5:97, supra, previous methodologies employed in the First and Second Round Rules should be used to establish present and prospective statewide and regional affordable housing need. 215 N.J. at 620. The parties should demonstrate to the court computations of housing need and municipal obligations based on those methodologies.

Second, many aspects to the two earlier versions of Third Round Rules were found valid by the appellate courts. In upholding those rules the appellate courts highlighted COAH's discretion in the rule-making process. Judges may confidently utilize similar discretion when assessing a town's plan, if persuaded that the techniques proposed by a town will promote for that municipality and region the constitutional goal of creating the realistic opportunity for producing its fair share of the present and prospective need for low- and moderate-income

41

housing.  In guiding the courts in those matters, we identify certain principles that the courts can and should follow.

One, our decision today does not eradicate the prior round obligations; municipalities are expected to fulfill those obligations.  As such, prior unfulfilled housing obligations should be the starting point for a determination of a municipality's fair share responsibility.  Cf. In re Adoption of N.J.A.C. 5:96 & 5:97, supra, 416 N.J. Super. at 498-500 (approving, as starting point, imposition of "the same prior round obligations [COAH] had established as the second round obligations in 1993").

Two, the Appellate Division twice addressed the Third Round Rules' elimination of the reallocation of excess present need[4] and found it permissible under both the FHA and Mount Laurel II. Id. at 500-02; In re Adoption of N.J.A.C. 5:94 & 5:95, supra, 390 N.J. Super. at 57-60.  While acknowledging that pre-FHA courts required reallocation because "[m]unicipalities with an excess of dilapidated housing occupied by the poor 'should not be expected to provide decent housing for a disproportionate share of the need,'" the initial reviewing panel found that

---

[4] "The [S]econd [R]ound [R]ules define[d] reallocated present need as 'the share of excess deterioration in a region transferred to all communities of the region with the exception of Urban Aid Cities.'"  In re Adoption of N.J.A.C. 5:94 & 5:95, supra, 390 N.J. Super. at 57 (quoting N.J.A.C. 5:93, Appendix A at 93-52).

42

Mount Laurel did not require such reallocation and COAH was to be afforded "broad discretion in implementing the Mount Laurel doctrine." In re Adoption of N.J.A.C. 5:94 & 5:95, supra, 390 N.J. Super. at 58-59 (quoting AMG Realty Co. v. Twp. of Warren, 207 N.J. Super. 388, 401 (Law Div. 1984)). Later, a second Appellate Division panel "reaffirm[ed] the validity of th[at] part of the [T]hird [R]ound [R]ules that d[id] not reallocate any of that need," In re Adoption of N.J.A.C. 5:96 & 5:97, supra, 416 N.J. Super. at 502, and this Court "substantially affirm[ed]" that opinion. In re Adoption of N.J.A.C. 5:96 & 5:97, supra, 215 N.J. at 619. The Mount Laurel judges may proceed on this basis when reviewing the plans of municipalities.

Three, the Appellate Division also approved the allowance of bonus credits towards satisfaction of a municipality's affordable housing obligations. For example, in In re Adoption of N.J.A.C. 5:94 & 5:95, supra, the panel affirmed the validity of a new construction credit, N.J.A.C. 5:94-4.16(a), which provided a municipality with credit "for each low or moderate income for-sale housing unit that [wa]s subject to affordability controls that [we]re scheduled to expire . . . if the affordability controls [we]re extended in accordance with" N.J.A.C. 5:80-26. 390 N.J. Super. at 81-84. The same panel also approved the allocation of a bonus credit to a municipality

43

"for each unit that is affordable to the very poor, that is, a member of the general public earning thirty percent or less of the median income." Ibid. (citing N.J.A.C. 5:94-4.22). In approving those bonuses, the appellate court acknowledged COAH's discretion in creating a comprehensive scheme and further found that "[t]he [T]hird [R]ound [R]ules d[id] not dilute satisfaction of the housing need to the same degree as the [F]irst [R]ound or [S]econd [R]ound [R]ules," which were both approved. Id. at 82-83. Again, the Mount Laurel judges may exercise the same level of discretion when evaluating a municipality's plan for Mount Laurel compliance.

Four, in In re Adoption of N.J.A.C. 5:96 & 5:97, supra, the Appellate Division approved the "Smart Growth" and "Redevelopment" bonuses contained in the second iteration of the Third Round Rules. 416 N.J. Super. at 495-97. The "Smart Growth" bonus awarded municipalities "1.33 units of credit for each affordable housing unit addressing its growth share obligation . . . that [wa]s included in a Transit Oriented Development in a Planning Area 1, 2 or a designated center." N.J.A.C. 5:97-3.18. The "Redevelopment" bonus awarded "1.33 units of credit for each affordable housing unit addressing its growth share obligation . . . that [wa]s included in a designated redevelopment area or rehabilitation area pursuant to the Local Redevelopment and Housing Law." N.J.A.C. 5:97-3.19.

The Appellate Division's opinion concluded that those bonuses were "reasonably designed to further important state policies" and, therefore, were valid. In re Adoption of N.J.A.C. 5:96 & 5:97, supra, 416 N.J. Super. at 497.

Five, in addressing the first iteration of Third Round Rules, the Appellate Division also approved the "exclu[sion of] the cost-burdened poor from the present need or rehabilitation share calculation." In re Adoption of N.J.A.C. 5:94 & 5:95, supra, 390 N.J. Super. at 36. In doing so, the appellate panel noted that pre-FHA courts also had allowed exclusion of the "cost-burdened poor" from the fair share formula. Id. at 35 (citing AMG Realty, supra, 207 N.J. Super. at 422-23). The court found that COAH's decision to exclude the cost-burdened poor was a permissible exercise of discretion. Id. at 36.

Six, the Appellate Division also approved a methodology for identifying substandard housing that used "fewer surrogates [or indicators] to approximate the number of deficient or dilapidated housing units." Id. at 38. In fact, COAH's Second Round Rules had approximated based on seven indicators, while the earlier-adopted Third Round Rules considered only three. Id. at 38-39. The appellate court acknowledged a change in the available United States Census data that triggered the reduction in indicators and found that COAH did not abuse its discretion in reducing the number of factors from seven to three. Id. at

45

40.  That, like the previously mentioned areas left to COAH's discretion, and others not directly precluded by the Appellate Division's decisions or ours remain legitimate considerations for the Mount Laurel judges when evaluating the constitutionality and reasonableness of the plans they are called upon to review.

The above examples of approved actions from the earlier appellate decisions are cited to guide the Mount Laurel-designated judges that will hear the actions pertaining to a town's housing plan.  We emphasize that the courts should employ flexibility in assessing a town's compliance and should exercise caution to avoid sanctioning any expressly disapproved practices from COAH's invalidated Third Round Rules.  Beyond those general admonitions, the courts should endeavor to secure, whenever possible, prompt voluntary compliance from municipalities in view of the lengthy delay in achieving satisfaction of towns' Third Round obligations.  If that goal cannot be accomplished, with good faith effort and reasonable speed, and the town is determined to be constitutionally noncompliant, then the court may authorize exclusionary zoning actions seeking a builder's remedy to proceed against the towns either that had substantive certification granted from COAH under earlier iterations of Third Round Rules or that had held "participating" status before

COAH until this action by our Court lifted the FHA's exhaustion-of-administrative-remedies requirement.

In conclusion, we note again that the action taken herein does not prevent either COAH or the Legislature from taking steps to restore a viable administrative remedy that towns can use in satisfaction of their constitutional obligation.  In enacting the FHA, the Legislature clearly signaled, and we recognized, that an administrative remedy that culminates in voluntary municipal compliance with constitutional affordable housing obligations is preferred to litigation that results in compelled rezoning.  See Hills, supra, 103 N.J. at 21-22.  It is our hope that an administrative remedy will again become an option for those proactive municipalities that wish to use such means to obtain a determination of their housing obligations and the manner in which those obligations can be satisfied.

VI.

As specifically authorized by this opinion and its accompanying order, relief in aid of litigants' rights is granted.

JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON, and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.  CHIEF JUSTICE RABNER did not participate.

47

IN THE MATTER OF THE ADOPTION
OF <u>N.J.A.C.</u> 5:96 AND 5:97 BY
THE NEW JERSEY COUNCIL ON
AFFORDABLE HOUSING.

O R D E R

This matter having come before the Court on motion in aid of litigants' rights under <u>Rule</u> 1:10-3 by Fair Share Housing Center (FSHC) seeking relief from the exhaustion of remedies before the Council on Affordable Housing (COAH) required by the Fair Housing Act (FHA), <u>N.J.S.A.</u> 52:27D-301 to 329, and allowing civil actions concerning municipalities' compliance with constitutional affordable housing obligations to proceed in the courts; and

The Court having reviewed the papers submitted in support of and in opposition to this application, and having heard oral argument; and

Consistent with this Court's accompanying opinion and as more fully set forth therein, and for good cause shown

It is ORDERED that relief in aid of litigants' rights, under the authority of <u>Rule</u> 1:10-3, is granted as follows:

1. The FHA's exhaustion-of-administrative-remedies requirement is dissolved until further order of the Court and the courts may resume their role as the forum

1

of first resort for evaluating municipal compliance with Mount Laurel obligations, as set forth herein.

2. The courts are hereby authorized to hear and decide actions addressing municipal compliance with constitutional Mount Laurel obligations by municipalities that had sought the protections of the FHA through COAH.

3. The effective date of this Order is delayed by ninety days to effectuate an orderly transition to the judicial remedies authorized herein.

4. A transitional process is hereby established in recognition of the various stages of municipal preparation to demonstrate Mount Laurel compliance that may exist as a result of the long period of uncertainty attributable to COAH's failure to promulgate Third Round Rules.

5. During the first thirty days following the effective date of this Order, the only actions that will be entertained by the courts will be declaratory judgment actions filed by any municipality that either (a) had achieved substantive certification from COAH under prior iterations of Third Round Rules before they were invalidated, or (b) had "participating" status before COAH. In a declaratory judgment action filed by such

municipalities, the municipality may seek a judicial declaration that its housing plan is presumptively valid because it presents a realistic opportunity for the provision of its fair share of its housing region's present and prospective need for low- and moderate-income housing.

6. In the event that any municipality in either of the aforementioned categories waits and does not file a declaratory judgment action during that initial thirty-day period, an action solely focused on whether the municipality's housing plan meets its Mount Laurel obligations (a constitutional compliance challenge) may thereafter be brought by a party against that municipality.

7. In all declaratory judgment and constitutional compliance cases to be brought before the courts, on notice and opportunity to be heard, the trial court may grant temporary periods of immunity prohibiting exclusionary zoning actions from proceeding, as set forth in our opinion.

8. Only after a court has had the opportunity to fully address constitutional compliance and has found constitutional compliance wanting shall it permit

exclusionary zoning actions and any builder's remedy to proceed in a given case.

9. The court's evaluation of a municipality's plan that had received substantive certification, or of a plan that will be submitted to the court as proof of constitutional compliance, may result ultimately in the municipality's receipt of the judicial equivalent of substantive certification and accompanying protection as provided under the FHA.

10. All civil actions authorized herein shall be directed to the Mount Laurel-designated judges assigned in the vicinages.

WITNESS, the Honorable Jaynee LaVecchia, Presiding Justice, at Trenton, this 10th day of March, 2015.

CLERK OF THE SUPREME COURT

4

SUPREME COURT OF NEW JERSEY

NO.   M-392                         SEPTEMBER TERM 2014

DISPOSITION    Motion in Aid of Litigants' Rights

IN THE MATTER OF THE ADOPTION
OF N.J.A.C. 5:95 AND 5:97 BY
THE NEW JERSEY COUNCIL ON
AFFORDABLE HOUSING

DECIDED          March 10, 2015
                 Justice LaVecchia          PRESIDING
OPINION BY       Justice LaVecchia
CONCURRING OPINION BY
DISSENTING OPINION BY

| CHECKLIST | GRANT AS AUTHORIZED BY OPINION AND ORDER | |
|---|---|---|
| CHIEF JUSTICE RABNER | ----------------------- | -------------------- |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |

1