NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

## TAX COURT OF NEW JERSEY



**Kathi F. Fiamingo**
**Judge**

**153 Halsey Street**
**Gibralter Building –8th Floor**
**Newark, New Jersey 07101**
**(609) 815 2922 EXT 54600**
**Fax: (973) 648-2149**

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE TAX COURT
COMMITTEE ON OPINIONS**

June 2, 2017

Joyce W. Murray, Esq.
33 Stockton Court
Newtown, PA 018940

Michael P. De Marco, Esq.
De Marco & De Marco
912 Belmont Avenue
North Haledon, NJ 07508

RE:     Vena v. Borough of North Haledon
        Docket No. 014550-2012

Counsel:

This is the court's opinion in the above-referenced matter. This matter was submitted to the court pursuant to R. 8:8-1(b) for resolution without a trial.

Because plaintiff has failed to overcome the presumption of correctness of the tax assessment, the judgment of the Passaic County Board of Taxation is affirmed.

*

## I.    Facts and Procedural History

The following facts are obtained from the Joint Stipulation, including attached exhibits, submitted by the parties.[1]

Plaintiff purchased a condominium unit known as 6 Peachtree Lane, North Haledon, New Jersey (Block 58.03, Lot 29.04 on the official tax map) (the "subject property"). The condominium association had been formed by Master Deed recorded in the Passaic County Register's Office on March 14, 2003. The deed by which plaintiff took title reflects that plaintiff purchased the subject property from the developer on September 28, 2004, for a purchase price of $38,196. The deed further reflects that plaintiff's title is

> subject to the terms, conditions, restrictions, limitations and provision (sic) as set forth in the Affordable Housing Agreement dated, September 28, 2004, to be recorded simultaneously herein (sic) in the office of the Clerk of Passaic County and is also on file with the Clerk of the Borough of Haledon. This is a Low income unit (sic)

The "Affordable Housing Agreement" ("AHA") reflects that it is entered into by plaintiff and the "Borough of North Haledon, or its designated assignee."[2] The AHA further provides that the subject property is designated "low and moderate income housing" as defined by the Fair Housing Act, N.J.S.A. 52:27D-301, et seq. ("FHA") and that certain "covenants, conditions and restrictions" are imposed upon the subject property for a period of "at least thirty (30) years." In particular, the AHA provides that:

> [t]he Owner . . . shall not sell the unit at a Resale Price greater than an established Base Price plus the allowable percentage of an increase as determined by the Index applicable to the municipality in which the unit is located. However in no event

---

[1] The Stipulation was initially submitted by plaintiff without the signature of defendant. Defendant's counsel orally represented to the Hon. Joshua D. Novin that defendant concurred with the Stipulation. Counsel subsequently confirmed in writing that he joined in the stipulation of facts submitted by plaintiff. At the request of the court the stipulation of facts was supplemented to include the date of COAH certification for the municipality's affordable housing plan which included the subject property.

[2] Uncertified copies of the deed and Affordable Housing Agreement submitted by the parties suggest that the deed and AHA were recorded in the Passaic County Register's office on October 6, 2004.

shall the approved resale price be established at a lower level than the last recorded purchase price.

"Index" is defined under the AHA as the "measured percentage of change in the median income for a Household of four by geographic region using the Income guideline approved for use by [the Council on Affordable Housing ("COAH")]" and "Base Price" is defined as the initial sales price.

North Haledon submitted a petition for COAH certification of its "fair share housing plan" and received substantive certification on May 2, 2001. The municipality received credit for the subject property as part of the plan included in the petition for which certification was granted.

Prior to 2012, the subject property was assessed as follows:

| | |
|---|---|
| Land: | $10,000 |
| Improvements: | 3,400 |
| Total | $13,400 |

As a result of a municipal-wide revaluation conducted in North Haledon (the "municipality") for tax year 2012, the assessment on the subject property was set as follows:

| | |
|---|---|
| Land: | $20,000 |
| Improvements: | 27,700 |
| Total | $47,700 |

Plaintiff appealed the assessment to the Passaic County Board of Taxation ("PCBT") which affirmed the assessment. The code noted on the Memorandum of Judgment was "2A." At the hearing before the PCBT, the Assessor testified that the subject property's tax assessment had been determined in accordance with an "online calculator" published by the New Jersey Department of Community Affairs (DCA) on its website. Use of the referenced calculator indicated that the

3

"maximum allowable sale price" for 2011 was $47,723.[3]  Plaintiff thereafter filed a timely appeal of the PCBT judgment with the Tax Court

## II.    Legal Standards

The court reviews this matter pursuant to R. 8:8-1(b), which provides that:

> A party may at any time upon notice to all other parties move the submission of a case for decision without trial, on the ground that sufficient facts have been admitted, stipulated, established by depositions or otherwise included in the record. The court may require the filing of any additional materials and briefs and oral argument, or it may direct that the matter be placed upon the trial calendar.

"Subparagraph (b) of the rule is akin to a summary judgment practice and is particularly appropriate in those cases, such as exemption cases, where the operative facts are not in dispute but only the manner in which the law applies thereto."  Pressler and Verniero, Rules Governing The Courts of the State of New Jersey, comment  1.1 on R. 8:8-1 (2017).

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact challenged and the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).  In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995), our Supreme Court established the standard for summary judgment as follows:

> [W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.

---

[3] The exhibit submitted by the parties was captioned "2014 COAH Re-Sale Price Indicator" and appears to be dated 9/30/16.  Although the parties submit to the court that the exhibit was "produced" by the municipal tax assessor at the PCBT hearing, the court questions whether this exhibit could have been produced at a hearing held in 2012.

"The express import of the Brill decision was to 'encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves.'" Township of Howell Twp. v. Monmouth Cnty. Bd. of Taxation, 18 N.J. Tax 149, 153 (Tax 1999) (quoting Brill, supra, 142 N.J. at 541).

"[T]he determination [of] whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 523. Brill, supra, 142 N.J. at 523.

The material facts, as set forth above, are not in dispute. The resolution of this matter turns on the interpretation of regulations issued by the COAH and the New Jersey Housing and Mortgage Finance Agency ("HMFA").

### III. Conclusions of Law

#### A. Plaintiff's Procedural Challenge to the PCBT Judgment

As an initial matter, plaintiff first argues that the judgment of the PCBT was procedurally deficient. The memorandum of judgment issued by the PCBT referenced Judgment Code "2A" in affirming the assessment. The form of judgment provides various explanations for the codes utilized by the Board in issuing judgment. The explanation for judgment code category 2 is:

2.   Assessed Valuation Affirmed
   A.  Assessment within range (**N.J.S.A.** 54:3-22)
   B.  Presumption of Correctness not overturned
   C.  Personal Property

N.J.S.A. 54:3-22 provides generally for the hearing of any appeal made to the County Board of Taxation and allows for the revision of the "taxable value" of the property being appealed in circumstances where the percentage of assessed value to true value is above or below the

5

common level range (subsection (c)), or exceeds the county percentage level (subsections (d) and (e)). Plaintiff correctly notes that those adjustments are inapplicable to "any tax year in which the taxing district shall have completed and put into operation a district-wide revaluation program." N.J.S.A. 54:3-22(f). Plaintiff thus argues that the use of Judgment Code 2A, "Assessment within Range" is contrary to the statute, and the basis for the judgment of the PCTB is "erroneous."

It appears that plaintiff is correct that Judgement Code 2A was not a correct basis to affirm an assessment set during a district-wide revaluation. That error, however, is of no consequence in the matter before this court. This court determines all issues of fact and of law de novo. N.J.S.A. 2B:13-3(b). All Monmouth Landscaping & Design, Inc. v. Manalapan Tp., 23 N.J. Tax 250, 260 (Tax 2006).

> A de novo hearing offers the reviewing court the opportunity to consider the matter "anew, afresh [and] for a second time." Romanowski v. Township of Brick, 185 N.J. Super. 197, 204 (Law Div. 1982), aff'd o.b., 192 N.J. Super. 79, (App.Div.1983). It is incumbent upon the reviewing court, in a de novo proceeding, to make its own findings of fact. All relevant facts must be considered, "whether or not they were previously considered...in making the assessment." Middlesex Water Co. v. Director, Division of Taxation, 3 N.J. Tax 233 (Tax 1981). In tax appeal matters, the reviewing court is required to review an assessment and "apply the same statutory criteria that direct the assessor in the discharge of his statutory duty." Chevron U.S.A., Inc. v. City of Perth Amboy, 9 N.J. Tax 571, 581 (Tax 1988). The decisions of the Tax Court "must be based on the evidence before it and the data that are properly at its disposal.
>
> [City of Elizabeth v. 264 First St., LLC, 28 N.J. Tax 408, 447 (2015)]

Thus regardless of the code utilized by the PCTB, this court will decide the issues de novo. The use of an incorrect code by the PCBT does not affect the court's determination in this matter.[4]

---

[4] Similarly, plaintiff's complaint that the PCTB considered an unsigned spread sheet calculating the maximum resale price in issuing its judgment is irrelevant to the court's determination in this matter.

6

**B. Plaintiff's Substantive Challenge to Assessment**

Substantively, plaintiff argues that the defendant's reliance on COAH's guidance to value the subject property was inappropriate. Plaintiff does not argue that the maximum resale price is an inappropriate basis upon which to determine an assessment for a property subject to the Fair Housing Act. Plaintiff maintains that the methodology utilized by the on-line calculator published by the DCA for use in determining the maximum resale price for affordable housing units was flawed, because that calculator utilized an incorrect Index. Plaintiff submits that the calculation provided to the court by him utilizing what he asserts is the correct Index should instead be accepted by the court to set the maximum resale price and the assessment for the subject property.

The following brief history of Affordable Housing developments in this State is set forth to provide context for plaintiff's arguments in this matter. It is not, nor is it intended to be, a detailed discussion of New Jersey's affordable housing issues. Such a discussion is not required for the resolution of this matter. [5]

**1. Brief History of Affordable Housing in New Jersey**

In S. Burlington Cnty NAACP v. Twp. of Mount Laurel, 67 N.J. 151, appeal dismissed and cert. denied, 423 U.S. 808, 96 S. Ct. 18 (1975) ("Mount Laurel I") and S. Burlington Cnty NAACP v. Twp. of Mount Laurel, 92 N.J. 158 (1983) ("Mount Laurel II"), the New Jersey Supreme Court established and reaffirmed the fundamental constitutional and moral general welfare obligation of municipalities to help people secure a decent home. Mount Laurel II, supra, 92 N.J. at 208. Municipalities satisfy their "constitutional obligation by affirmatively affording a realistic opportunity for the construction of [their] fair share of the present and prospective regional need for low and moderate income housing." Id. at 205.

---

[5] A thorough discussion of the history of affordable housing in this State may be found in the Supreme Court's decision at In Re Adoption of N.J.A.C. 5:96, 215 N.J. 578 (2013).

In light of the absence of a legislative solution to the provision of affordable housing in New Jersey, in Mount Laurel II, supra, the court fashioned a judicial remedy to enforce the Mount Laurel doctrine. It sanctioned a "builder's remedy" by which builder-plaintiffs could sue municipalities for "the opportunity to construct housing at higher densities than a municipality otherwise would allow." Mount Laurel II, supra, 92 N.J. at 279-281.

In 1985, the New Jersey Legislature enacted the FHA, N.J.S.A. 52:27D-301 to -329, effective July 2, 1985, which codified the core constitutional holdings of the Mount Laurel decisions. The FHA created a safe haven from suit for municipalities that bore their fair share of their region's low- and moderate-income housing. It created COAH, providing it with rulemaking and adjudicatory powers to execute the provision of affordable housing in this state. In Re Adoption of N.J.A.C. 5:96, 215 N.J. 578, 584-85 (2013). By petitioning COAH municipalities could obtain certification evidencing their compliance with their constitutional obligations. N.J.S.A. 52:27D-313. COAH was to review such petitions and grant or deny substantive certification, with or without conditions. N.J.S.A. 52:27D-307 and -314. If granted certification, the municipality was to be insulated from exclusionary zoning litigation for six years. N.J.S.A. 52:27D-313(a).[6]

COAH's charge was to determine the housing needs at state and regional levels and adopt criteria and guidelines for the determination of a municipality's present and prospective fair share of the housing need in a given region. Its assessment of each municipality's affordable-housing responsibility was to be updated every six years. N.J.S.A. 52:27D-307(c). In 2002, the FHA was amended to require updates every ten years. Ibid.

---

[6] This period was extended to ten years in 2002.

8

In 1986 COAH adopted substantive rules governing the period of 1987 to 1993 – the First Round Rules. See N.J.A.C. 5:92-1.1 to -18.20, Appendices A through F. Corresponding procedural rules were also adopted at N.J.A.C. 5:91. In February 1991, COAH readopted N.J.A.C. 5:91 and 5:92 without change, to expire in February 1996. See 23 N.J.R. 688 (Mar. 4, 1991). Substantive rules governing the Second Round covering the cumulative period of 1987 to 1999 were adopted by COAH in 1994 to expire in June 1999. See N.J.A.C. 5:93-1.1 to -15.1, Appendices A through H.

Various legal challenges to the First and Second Round Rules failed. In Re N.J.A.C. 5:96, supra, 215 N.J. at 592. The methodologies employed by COAH in the First and Second Round Rules "largely followed the remedial approaches established in Mount Laurel II." Id. at 593.

Although the Second Round Rules were due to expire in June, 1999, COAH did not timely adopt the third round of rules. Instead, in May 1999, COAH readopted the substantive Second Round Rules at N.J.A.C. 5:93, extending their expiration date to May 2004. See In Re Adoption of N.J.A.C. 5:94 & 5:95 390 N.J. Super. 1, 11 (App. Div.), certif. denied, 192 N.J. 71 (2007).

COAH first proposed Third Round Rules in October 2003, which were thereafter re-proposed in August 2004. Revised Third Round Rules were adopted in December 2004 to govern the period 1999 to 2014 for municipalities that received Third Round substantive certification prior to January 25, 2007. N.J.A.C. 5:94-1.2.

Parts of the Third Round Rules were invalidated and the matter was remanded to COAH for the adoption of revised Third Round Rules. In Re N.J.A.C. 5:94 & 5:95, supra, 390 N.J. Super. at 11. COAH proposed and subsequently adopted a number of amendments to the revised Third Round Rules, effective June 2, 2008. See N.J.A.C. 5:96-1.1 to -20.4; N.J.A.C. 5:97-1.1 to -10.5, Appendices A through F. Those rules were challenged and invalidated by the Appellate Division.

9

In Re Adoption of N.J.A.C. 5:96 and 5:97, 416 N.J. Super. 462 (App. Div. 2010). That decision was stayed by the New Jersey Supreme Court, which thereafter affirmed the Appellate Division and invalidated the regulations. In Re N.J.A.C. 5:96, supra, 215 N.J. at 586.

In its September 26, 2013 decision invalidating the Third Round Rules, our Supreme Court endorsed the remedy of the Appellate Division and required COAH to adopt rules compliant with the legislative intent of the FHA by February 26, 2014. Id. (2015). COAH failed to adopt such rules, notwithstanding the Court's order and the grant of extensions of the deadline to November 17, 2014. When brought before the Supreme Court on motions to enforce litigant's rights, the Court found that COAH was noncompliant with its statutory obligations and the requirements of judicial orders entered against it and that further judicial intervention was needed to further the constitutional mandate of affordable housing. In Re N.J.A.C. 5:96 & 5:97, 221 N.J. 1 (2015).

As a result, the Supreme Court ruled that as before the enactment of the FHA, municipalities were to be subject to judicial review of their constitutional compliance with their Mount Laurel obligations. Id. at 19-20. The exhaustion-of-administrative-remedies requirement of the FHA was eliminated and the courts were to "resume their role as the forum of first instance for evaluating municipal compliance with constitutional Mount Laurel obligations." Id. at 20.

The court, while recognizing the plight of those municipalities which had obtained certification from COAH under early versions of the Third Round Rules, noted that such rules were invalid. Thus, the court found that despite such certifications, the ordinances of towns receiving certification under the Third Round Rules must be reviewed to determine if they met the Mount Laurel obligations of providing its "fair share of the present and prospective regional need for low and moderate income housing." Id. at 25. While granting certain concessions to municipalities which took some action under the Third Round Rules, the housing plans of such

municipalities were not immune from judicial review for constitutional compliance. Furthermore, the court left open the possibility of an administrative remedy, noting that its decision did not prevent either "COAH or the Legislature from taking steps to restore a viable administrative remedy that towns can use in satisfaction of their constitutional obligation." Id. at 34.

The court also provided some guidance to the courts moving forward in reviewing housing plans, noting the approval of methodologies from the First and Second Round Rules and aspects of the two earlier versions of the Third Round Rules which were found to be valid. See Id. at 30-34.

### 2. Presumption of Validity

"Original assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). "Based on this presumption, the appealing taxpayer has the burden of proving that the assessment is erroneous." Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985) (citing Riverview Gardens v. North Arlington Borough, 9 N.J. 167, 174 (1952)). "The presumption of correctness…stands, until sufficient competent evidence to the contrary is adduced." Little Egg Harbor Township v. Bonsangue, 316 N.J. Super. 271, 285-86 (App. Div. 1998).

> The settled rule is that there is a presumption that an assessment made by the proper authority is correct and the burden of proof is on the taxpayer to show otherwise. And the taxpayer has not met this burden unless he has presented ... sufficient competent evidence to overcome the presumption, that is, to establish a true valuation of the property at variance with the assessment. In other words, it is not sufficient for the taxpayer merely to introduce evidence: the presumption stands until sufficient competent evidence is adduced to prove a true valuation different from the assessment. Such evidence must be definite, positive and certain in quality and quantity to overcome the presumption.
>
> [Aetna Life Ins. Co. v. Newark City, 10 N.J. 99, 105 (1952) (citations omitted).]

11

Thus, at the close of plaintiff's proofs, the court must be presented with evidence which raises a "debatable question as to the validity of the assessment." MSGW Real Estate Fund, LLC, supra, 18 N.J. Tax at 376.

In evaluating whether the evidence presented meets the "cogent evidence" standard, the court "must accept such evidence as true and accord the plaintiff all legitimate inferences which can be deduced from the evidence." Id. at 376 (citing Brill, supra, 42 N.J. 520 ). The evidence presented, when viewed under the Brill standard "must be 'sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.'" West Colonial Enters, LLC v. City of East Orange, 20 N.J. Tax 576, 579 (Tax 2003) (quoting Lenal Properties, Inc. v. City of Jersey City, 18 N.J. Tax 405, 408 (Tax 1999), aff'd, 18 N.J. Tax 658 (App. Div. 2000), certif. denied, 165 N.J. 488 (2000)). "Only after the presumption is overcome with sufficient evidence…must the court 'appraise the testimony, make a determination of true value and fix the assessment.'" Greenblatt v. Englewood City, 26 N.J. Tax 41, 51-2 (Tax 2011) (quoting Rodwood Gardens, Inc. v. City of Summit, 188 N.J. Super. 34, 38-39 (App. Div. 1982)).

The court reviews the plaintiff's presentation with those principles in mind and finds that the plaintiff has failed to present sufficient evidence to establish a debatable question as to the correctness of the assessment.

### 3. Discussion

#### a. Affordability Controls

Prior to 2001, "[t]hree agencies, COAH, the Department of Community Affairs ("DCA"), and the [New Jersey Housing and Mortgage Finance Agency ("HMFA")] each adopted distinct sets of rules establishing controls on the continuing affordability of housing constructed pursuant

12

to the FHA." In re Adoption of Unif. Hous. Affordability Controls, 390 N.J. Super. 89, 95-96 (App. Div. 2007). Effective October 1, 2001, the HMFA repealed its rules and adopted the Uniform Housing Affordability Controls (UHAC), N.J.A.C. 80:26.1 to -26.26. See 33 N.J.R. 230(a).[7] Simultaneously, COAH amended its substantive rules at N.J.A.C. 5:93-9.17 to provide that

> [COAH's Controls on Affordability (Subchapter 9)] shall be effective for municipalities that petition for substantive certification or amend a certified plan including an affordable housing development before the effective date of the Uniform Housing Affordability Controls, N.J.A.C. 5:80-26, October 1, 2001. For municipalities that petition for substantive certification or amend a certified plan including an affordable housing development on or after that date, this subchapter, except for N.J.A.C. 5:93-9.2(f), 9.2(g) and 9.16, shall be inapplicable and the affordable housing development shall be subject to the Uniform Housing Affordability Controls set forth at N.J.A.C. 5:80-26.
>
> [N.J.A.C. § 5:93-9.17.]

COAH did not repeal its Affordability Controls, but deferred to UHAC for housing developments included in housing plans certified after its adoption. See 33 N.J.R. 248(a) ("The adoption of this COAH proposed new rule and the [HMFA] proposed new rules would have the effect of replacing COAH's current housing affordability controls . . . with the [HMFA's] Uniform Controls with respect to affordable housing developments that are a part of petitions for substantive certification or amendments to certified plans submitted to COAH on or after the date of the effective date of the new rule.").[8]

North Haledon filed a petition for substantive certification with March 20, 2000. That petition was reviewed and COAH certification was issued May 2, 2001. The parties have

---

[7] UHAC were further amended in 2004, including the amendment to N.J.A.C. 5:80-26.6(d) at issue here, infra.

[8] See also Understanding UHAC, A Guide to the Uniform Housing Affordability Controls for Administrators of Affordable Housing, at 4, http://nj.gov/dca/services/lps/hss/admin-files/2006uhacmanual.pdf ("Any units in a Plan that, prior to October 1, 2001, received substantive certification from COAH (N.J.A.C. 5:93-9.17), a Court judgment of compliance, or were governed by a grant agreement or contract will have its control period governed by the applicable substantive certification (N.J.A.C. 5:93), judgment or grant agreement or contract.").

13

stipulated that the subject property was included in North Haledon's fair share plan certified on May 2, 2001. According to N.J.A.C. 5:93-9.17, the affordability controls set forth at N.J.A.C. 5:93-9 et seq. apply to the subject property and UHAC is inapplicable. Plaintiff maintains however that, despite the plain language of the regulation, UHAC is applicable to the subject property and should be applied to establish the maximum resale price.

In order to appreciate the essence of plaintiff's argument, a comparison of the competing provisions establishing maximum resale prices under COAH's affordability controls (N.J.A.C. 5:93-9.15) and those under UHAC (N.J.A.C. 5:80-26.d) is necessary.

Specifically, N.J.A.C. 5:93-9.15 provides: "[t]he price of an owner-occupied housing unit may increase annually based on the percentage increase in the regional median income limit for each housing region. In no event shall the maximum resale price established by the administrative entity be lower than the last recorded purchase price." (Emphasis added.)

The corresponding provision in UHAC, N.J.A.C. 5:80-26.d, provides:

[t]he maximum resale price for a restricted ownership unit, if the resale occurs prior to the one-year anniversary of the date on which title to the unit was first transferred to a certified household, is the initial purchase price. If the resale occurs on or after such anniversary date, the maximum resale price shall be consistent with the regional income limits most recently published by COAH and calculated pursuant to N.J.A.C. 5:94-7.2(b). The administrative agent shall approve all resale prices, in writing and in advance of the resale, to assure compliance with the foregoing standards. (Emphasis added.)

N.J.A.C. 5:94-7.2(b) provides:

The price and rent of low and moderate income units may be increased annually based on the percentage increase in the Housing Consumer Price Index for the United States. This increase shall not exceed nine percent in any one year. Rents for units constructed pursuant to low income tax credit regulations shall be indexed pursuant to the regulations governing low income tax credits. (Emphasis added.)

Plaintiff maintains that if the increases in the Housing Consumer Price Index ("HCPI") since plaintiff purchased the subject property are utilized, the maximum resale price of the subject

property would be $44,142, not $47,723, as determined by the on-line calculator.[9] Plaintiff argues

that his calculation of the maximum resale price using the HCPI as required by UHAC's reference

to N.J.A.C. 5:94-7.2(b) controls to establish the proper tax assessment of the subject property.

In support of his argument that the provisions of UHAC apply, plaintiff refers to N.J.A.C.

5:80-26.1 which provides:

> This subchapter is designed to implement the New Jersey Fair Housing Act
> (N.J.S.A. 52:27D-301 et seq.) by assuring that low-and moderate-income units
> created under the Act are occupied by low-and moderate-income households for an
> appropriate period of time. This subchapter provides rules for the establishment and
> administration of affordability controls on restricted units that receive COAH credit
> under the Fair Housing Act; that receive funding from the Division under the
> Neighborhood Preservation Balanced Housing Program; that receive funding from
> the Agency under its UHORP and MONI programs; or with respect to which a
> municipality or developer contracts with the Agency, HAS or other experienced
> administrative agent approved by DCA, the Agency or COAH for the
> administration of affordability controls pursuant to the Fair Housing Act. Unless
> expressly stated otherwise herein, this subchapter shall apply to all restricted units
> described in the foregoing sentence, regardless of the date on which the units were
> created; provided, however, that the rules do not apply to units qualifying for the
> Federal Low-Income Housing Tax Credit under Section 42 of the Internal Revenue
> Code, units that receive Balanced Housing funds under the Agency's Home Express
> program or to units receiving assistance under the Federal HOME program, 24
> C.F.R. § 92.252(e), § 92.254(a)(4); HUD 202 program, 24 C.F.R. Part 891; HUD
> 811 program, 24 C.F.R. Part 890; HUD HOPE VI program; or Federal Home Loan
> Bank, Affordable Housing Program, 12 C.F.R. Part 60.
>
> [N.J.A.C. 5:80-26.1 (emphasis added).]

Although plaintiff insists that the provisions of UHAC trump those of COAH, it is clear

that N.J.A.C. 5:93-9.17 controls. See In Re Adoption of Uniform Housing Affordability Controls,

supra, 390 N.J. Super. at 101-02 (COAH, not HMFA has primary responsibility of implementing

the Mount Laurel Doctrine. HMFA's role under FHA is to complement COAH's interpretation of

Mount Laurel doctrine, not to supersede it.) COAH's adoption of UHAC was limited to housing

---

[9] The parties presented as a joint exhibit the percent change in the Housing category for the Consumer Price Index for All Urban Consumers (CPI-U) from 2004 to 2012 to support plaintiff's calculation of the maximum resale price in 2011. The court makes no determination as to the accuracy of those calculations.

developments that are a part of petitions for substantive certification submitted to COAH after October 1, 2001. Such a determination was completely within the discretion and authority of COAH. UHAC, N.J.A.C. 5:80-26.1 to -26.26, was adopted by the HMFA "pursuant to the authority of the New Jersey Housing and Mortgage Finance Agency Law of 1983, N.J.S.A. 55:14K-1, et. seq." N.J.A.C. 5:80-1.1. What plaintiff miscomprehends is that but for the incorporation of UHAC by COAH pursuant to N.J.A.C. 5:93-9.17 the affordability controls set forth in subchapter 9 would have continued to apply in all COAH certified housing and UHAC would be wholly inapplicable.

Plaintiff's citation to U.S. Bank, N.A. v. Hough, 416 N.,J. Super. 286 (App. Div. 2010), rev'd and remanded 210 N.J. 187 (2012) is unpersuasive. In that matter, the court was reviewing the application of UHAC to a mortgage placed on an affordable housing unit. The unit had been purchased by the property owner prior to the adoption of UHAC by the HMFA, but the mortgage was placed on the unit after its adoption. The court, without discussion,[10] applied the provisions of UHAC to the mortgage under review in that matter. On appeal, the New Jersey Supreme Court, also without discussion, applied the provisions of UHAC to the mortgage. U.S. Bank, N.A. v. Hough, 210 N.J. 187 (2012). It is unquestionable that the matter under review in those cases involved the application of a regulation regulating excessive mortgages to a mortgage directly under the authority of the HMFA. Plaintiff's reliance on those cases to support his conclusion that UHAC applies for all purposes to all affordable housing units "regardless of the date on which the units were created" is misplaced. The HMFA was free to propose and adopt regulations to assist

_____

[10] Plaintiff refers to 416 N.J. Super 286, FN4 at 297 to support his position that the court concluded that the provisions of UHAC were applicable notwithstanding the fact that the unit had been created prior to the adoption of UHAC. The footnote merely indicates that, "Plaintiff does not contest that it was on constructive notice that the property was an affordable housing unit, subject to the UHAC regulations." If anything, this supports only that the plaintiff concluded that UHAC was applicable.

it in meeting its statutory oblilgations. Similarly, COAH was free to propose and adopt regulations applicable to matters within its purview.

"The FHA vests COAH with 'primary jurisdiction' over the administration of housing obligations and COAH's power 'is extremely broad.'" In Re Adoption of Uniform Housing Affordability Controls, supra, 390 N.J. Super. at 101. Administrative regulations are presumed to be valid. See New Jersey State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 222, (1999); In re Adoption of Amendments to N.J.A.C. 5:93-1.3 and 5:93-5.3, 339 N.J. Super. 371, 383 (App.Div.2001). The party challenging a regulation has the burden of overcoming that strong presumption. See Medical Soc'y of N.J. v. Department of Law & Pub. Safety, 120 N.J. 18, 25 (1990). An "agency's interpretation of the operative law is entitled to prevail, so long as it is not plainly unreasonable." Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 327 (1984). "Whether construing a statute or a regulation, it is not [the court's] function to 'rewrite a plainly-written enactment,' or to presume that the drafter intended a meaning other than the one 'expressed by way of the plain language. U.S. Bank, N.A. v. Hough, supra 210 N.J. at 24.

The regulation at issue here is clear. Plaintiff has not met its burden to overcome the strong presumption that the decision of COAH to retain its affordability controls for affordable housing units which were part of a plan certified prior to October 1, 2001 was valid. Plaintiff has presented nothing to this court which would lead it to conclude that the responsibilities devolved upon COAH by the FHA were subsumed by those entrusted to the HMFA when it adopted UHAC. N.J.A.C. 5:93-9.17 is clear on its face. The provisions of UHAC are inapplicable to the subject property. The court rejects plaintiff's position to the extent that plaintiff relies on UHAC to support its argument that the HCPI applies to calculate the maximum resale price of the subject property.

### b. Failure of Plaintiff's Proofs

Furthermore, from a proof standpoint, plaintiff has not provided this court with any reliable evidence that the on-line calculator is incorrect as applied to the subject property. That is, the court has nothing before it to determine what measuring stick was used by the on-line calculator in the calculation of maximum resale prices. The only evidence regarding the Index alleged to be utilized in the on-line calculator is an unauthenticated email from an individual identified as a representative from "Plan Administration, Council on Affordable Housing," responding to a query from counsel.[11] The response from the COAH representative does not identify the Index used by the on-line calculator in determining the maximum resale prices. Instead, the response indicates, in part, that "[t]he calculator and the Maximum Resale Price is exactly what should be used in a revaluation. Subchapter 94 is no longer a valid set of rules, it was replaced by 5:97 which references the Uniform Housing Affordability Controls for administration of units, which states that the resale prices should be based on the COAH calculator."

While one might argue that the email supports the conclusion that UHAC (and therefore the HCPI) was in fact utilized by the on-line calculator, plaintiff instead argues that the representative's reference to "5:97" supports his position that an incorrect Index was used. N.J.A.C. 5:97-9.3(b), adopted as part of the now invalidated Third Round Rules established the maximum resale price for COAH restricted units and provides that "[t]he price of owner-occupied low- and moderate-income units may increase annually based on the percentage increase in the regional median income limit for each housing region." From that reference plaintiff concludes that the HCPI was not used in the on-line calculator. Since plaintiff maintains that the use of any

---

[11] The email included in the submission of the parties to the court does not include the entirety of the email "chain." The question posed by plaintiff's counsel to which the COAH representative is responding in the email is not included in the submission. Without the question being posed, it is difficult to assess the context of the answer.

18

index other than the HCPI is contrary to the direction of UHAC (and specifically N.J.A.C. 5:80-26.6), plaintiff contends that the results obtained from the on-line calculator must be rejected. Since the assessment was derived from the online calculator, plaintiff then concludes that the presumption of correctness of the assessment has been overcome.

A vague reference to a regulatory provision in an unauthenticated email is insufficient proof to establish that the results obtained in the on-line calculator are invalid. Plaintiff provided no testimony or certification from any source that reliably establishes the bases upon which the annual increases in the on-line calculator were determined. There is nothing before this court upon which to determine what methodology was used in determining the resale prices in the on-line calculator. The reliability of the email provided by plaintiff intending to establish this fact is questionable, at best.

Further, as determined above, the court rejects plaintiffs argument to the extent plaintiff relies on the application of UHAC to support his position that the on-line calculator is incorrect.

### c. Misapplication of Prowitz

Finally, the court finds plaintiff's reliance on what it has determined is the maximum resale price as the basis to overcome the presumption of correctness is misplaced. In Prowitz v. Ridgefield Park Vill., 237 N.J. Super. 435, aff'd 122 N.J. 199 (1991), the court reviewed the real property tax assessment on a single-family residential property which was a part of the municipality's affordable housing program. Although the program preceded the enactment of the FHA, the unit was "creditable to [the municipality's] affordable housing units within the intendment of the [FHA]." Id. at 438. The court determined that "while the maximum resale price obtainable under the deed restriction does not necessarily define assessable value, the resale price is a factor that must be considered in fixing the assessment." Id. at 439. See also, Elizabeth Center

19

Apartments Urban-Renewal Corp. v. City of Elizabeth, 28 N.J. Tax 280 (App. Div. 2014)(limitations on sale imposed by a regulatory agreement with the Federal Housing Authority must be considered in valuing the property for assessment purposes).

In setting the assessment during the district-wide revaluation, defendant relied upon COAH's advice that the results obtained from its on-line calculator was the correct manner to determine the assessment. That was in keeping with the definition of Index as set forth in the AHA governing the subject property and the unquestionable submission of the subject property to the overall governance by COAH.

Plaintiff has provided nothing to this court to establish "a true valuation of the property at variance with the assessment." Aetna Life Ins. Co v. Newark City, supra, 10 N.J. at 105. The evidence provided tends to establish only that the increases in the HCPI since plaintiff purchased the subject property would result in a maximum resale price of $44,142. The court cannot determine the relevance of that conclusion to the matter at hand. Plaintiff has neither established that the HCPI is the appropriate Index to determine the maximum resale price of the subject property under the applicable regulation, nor that the methodology utilized by COAH and the municipality in setting subject property's 2012 local property tax assessment was incorrect.

Furthermore the resale price is merely a factor in determining the assessable value of the subject property under Prowitz, supra. Without more the court has nothing upon which to determine the true value of the subject property. That the parties stipulated "at the County Tax Board hearing" that the "subject property is unique and has no comparable sales available under which it may be valued," is of little assistance in determining the true value of the subject property in the matter before this court.

Viewing all of the evidence presented, plaintiff has failed to present sufficient competent evidence to prove a value different from the assessment. As a result, plaintiff has failed to overcome the presumption of correctness of the assessment. The assessment is affirmed.

### IV.    Conclusion

Plaintiff has failed to overcome the presumption of correctness of the assessment. The court will enter judgment affirming the assessment.

Sincerely,


/s/Kathi F. Fiamingo, J.T.C.